CHRISTIAN, J.
This is an appeal from a decree of the chancery court of the city of Richmond. The facts shown by the record, material to be noticed, are as follows: Margaret Sternan intermarried with Christian J. Stockmar in the year 1857. She was then the owner in fee simple of certain real estate, derived under her former husband’s will, she being the widow of Charles Sternan at the time of her intermarriage with Stockmar. *There was a marriage contract between the parties, executed before the marriage, and bearing date February 24th, 1857.
On the 1st day of August, 1859, a bill was filed in the county court of Henrico by the husband, Christian J. Stockmar, asking for a construction of the deed of marriage settlement. That bill contains the following allegation, after referring to said deed of marriage settlement:
“At the time said deed was prepared it was the intention of yoúr orator and of his wife, said Anna Margaret, that the land and other property of said Anna should be secured to her, and the land and other property of your orator should be secured to him, but by mistake of the draftsman the deed was drawn as appears by the copy above.”
*89 The bill further declares as follows:
“Your orator and his said wife, and said Henry Stockmar. and William Hebei and Emilie his wife, each desire that all of the property which said Anna Margaret held at the time of her marriage, as well as any she may hereafter acquire, shall be settled upon the said Anna Margaret as her absolute property, free from any claim on the part of her husband, and with power to said Anna Margaret to dispose of the same as she may desire, either by a writing executed as a deed or will; and that all of the property belonging to your orator at the date of his marriage, and any acquired since, or which may be hereafter acquired, shall be secured to your orator, free from all claim on the part of his said wife and of any other party to this bill; it being the intention of the parties to said marriage contract, at the time it was executed, that each of the parties thereto should have no interest in the property of the other, whether then owned or thereafter acquired.”
And then the prayer of the bill is that the court shall *enter a decree correcting the mistake in said deed, and securing the property belonging to said Anna Margaret at the date of said deed, or since acquired, or which may be hereafter acquired, to said Anna Margaret,' as if she were a feme sole, and with power to dispose of the same by writing in the nature of a deed or will, and in like manner to secure to your orator all property to him at the date of said deed, or which has been or may be since acquired, as completely and fully as if he had never been married, and to grant him such other and further relief as may be consistent with equity and the nature of the case may require.
To this bill all the defendants, the parties ^interested, to-wit: the wife of the plaintiff, Anna Margaret Stockmar, Henry Stockmar, son of plaintiff, and Eliza his wife, Henry Hebei, son of Mrs. Stockmar, and Emilie his wife, answered the bill by joint and separate answer, in which they say that the statements contained in said bill are true; that they desire the property of the plaintiff and of Anna Margaret Stockmar settled on them respectively, and asked that the pra3mr thereof be granted.
Appended to this answer was the following certificate of a notary public:
“City of Richmond, to-wit:
“I, Henry G. Cannon, a notary public in and for the city aforesaid, in the state of Virginia, do certify that Anna Maragarct Stockmar, the wife of Christian Jacob Stockmar, and Emilie Hebei, the wife of Wilhelm Hebei, and Eliza Stockmar, the wife of Henry Stockmar, each personally appeared before me, in my said city, and made oath that the statements contained in the answer hereto annexed are true to the best of their knowledge and belief, and the said Anna Margaret, Emilie and Eliza being examined by me privily and apart from their said husbands, and having said answers fully explained *to them, acknowledged that they had willingly signed and executed the same, and did not wish to retract it, and desired that the prayer of the bill referred to herein should be granted.
“Given under my hand this 27th day of July, 1859.
“Henry G. Cannon, “Notary Public.”
On the same day on which this bill and answer was filed, to-wit: on the 1st day of August, 1859, the court entered the following decree:
“This cause came on to be heard, by consent, on the bill and exhibits and answers of A. M. Stockmar, Wilhelm A. Hebei, Emilie Hebei. Henry Stockmar and Eliza Stock-mar, filed by like consent, with general replication to said answers, and was argued by counsel. On consideration whereof, the court (being of opinion that there is a mistake in the deed o f marriage settlement between the plaintiff, Christian Jacob Stockmar, and the defendant, Anna Margaret Stockmar, and that the intent and design of said deed was to secure to each of the parties thereto whatever estate either held at the date thereof, and all estate which either might thereafter acquire), doth adjudge, order and decree that all of the property, real, personal and mixed, belonging to said Anna Margaret Stockmar at the date of said deed of marriage settlement, and all she has since acquired, or, may herefter acquire or become entitled to, shall be and is hereby secured to her as fully and completely as if she were a feme sole, free from the debts of her said husband, and in no manner liable for his debts or contracts; and all of the property, real, personal and mixed, belonging to said Christian J\icob Stockmar at the date of said' deed of marriage settlement, and all he has since acquired,- or may hereafter acquire, shall be the property of said *Christian Jacob Stockmar as fully and completely as if he had never intermarried with said Anna Margaret, and said Anna Margaret shall be forever barred from all right of dower or other claim upon the estate of said Christian Jacob Stockmar by reason of the said marriage.2’
The record further shows that on the 28th February, 1863, Mrs. Margaret Stockmar (who had separated from her husband, Christian Stockmar, and assumed the name of Sternan, which was her name before she intermarried with Stockmar), conveyed by deed to Burging a piece or parcel of land lying in the county of Henrico, for the sum of $4,995. This property was afterwards sold by Burging to McDowell, for which, under their agreement, he paid one-third of purchase money in cash, and for the remaining two-thirds executed his two negotiable notes, payable at six and twelve months after date respectively. And thereupon Burging and wife executed and delivered to McDowell a deed with general warranty. Shortly after this transaction, McDowell, alleging that he had discovered a defect in the title to said *90 property, filed his bill in equity, in the chancery court of the city of Richmond, praying for an injunction restraining Burging from using or negotiating said notes, and asking for a rescission of the sale and the repayment of the purchase money to him which he had paid in cash.
An injunction was awarded, and upon the hearing, a decree was entered by the said chancery court to the effect that unless the défendant, Burging, should obtain, within four months, a deed from Wilhelm Hebei and Emilie, his wife, conveying their interest in said property to McDowell, that said injunction should be perpetuated, and the notes for the purchase money be surrendered, and so much of the purchase money as had been paid should be refunded.
*From this decree an appeal was allowed by one of the judges of this court.
The only question we have to determine is, whether Margaret Sternan had the right to make the conveyance in question to Burging, as a feme sole.
It is manifest, by an inspection of the ante-nuptial marriage settlement, that it was the intention of the parties that the property held by each should be held free from the marital rights of the other. At the date of the marriage settlement Mrs. Sternan was the owner in fee of the real estate (now the subject of controversy), which she derived as a devisee under her former husband’s will. It is plain that this real estate was intended to be settled on her, to be held as her separate estate, freed from the fetters and disability of coverture. But the instrument intended to secure this right to her was so inartificially drawn, that doubts might arise as to the true character of the estate with which she was vested. And in order to remove all doubts, a bill was filed by her husband, as heretofore set out, asking for a construction of the marriage settlement, in accordance with the real intention and purposes of the parties. In this bill it was alleged, as seen from the extract above referred to, that Christian Stockmar “and Margaret, his wife, and Henry Stockmar and Wilhelm Hebei and Emilie, his wife, each desire that all of the property which said Anna Margaret Sternan held at the time of her mar1 riage, as well as any she may hereafter acquire, shall be settled upon the said Anna Margaret as. her absolute property, free from any claim on the part of her husband, and with power to said Anna Margaret to dispose of the same as she may desire, either by writing executed as a deed or will.” To this bill, as has been seen, the parties, who alone were interested in the matter, and who were all of full age, were made parties.
They *answered the bill, and admitted that “the statements contained in the bill are true, and that they desire the property of the plaintiff and Anna Margaret Stockmar settled on them respectively, and ask that the prayer of this bill be granted.” The defendants, who were married women, were examined privily and apart from their husbands, and having the bill and answer fully explained to them, “acknowledged that they had willingly signed the answer, and desired that the prayer of the bill should be granted.” Upon this bill and answer, and upon an inspection of the instrument containing the marriage settlement filed with the bill, the court decreed “that all the property, real, personal and mixed, belonging to Anna Margaret Stockmar at the date of said deed of marriage settlement, and all she has since acquired, or may hereafter acquire or become entitled to, shall be, and is hereby secured to her as fully and completely as if she were a feme sole.”
I am of opinion, that under this decree, founded upon the bill and answer in this case, that Mrs. Stockmar was invested with a separate estate of which she had the power of disposal, as clearly and absolutely as she had on the day before her marriage. It is true the decree does not in terms confer upon her the jus disponendi. But that is its legal effect. The bill, answer and decree all bear date the same day. We must read the decree as if the bill and answer were embodied in it. If th'ere be any doubt as to the seope and effect of the decree, we may interpret its meaning by reference to the bill and answer. See Walker’s ex’or v. Page, 21 Gratt. 636.
The prayer of the bill is (and the answer admitting its allegations to be true asks that the prayer of the bill be granted), that all the property, real and personal, held by Mrs. Stockmar at the time of her marriage, or which she may afterwards acquire, may be settled upon her as her absolute property, free from any claim on the part of *her husband, “with power to dispose of the same as she may desire, either by a writing, executed by deed or will.” Now, when in reference to such a bill and answer, the court decrees that her property to which she, at the time of her marriage, was entitled in fee, “shall be, and is°s hereby secured to her as fully and completely as if she were a feme sole,” I think it dear that this decree not only confers upon her a separate estate, but also the power of alienation; and that a deed conveying her separate real estate, executed by her (her husband not uniting in it), conferred upon the grantee a perfect title. As confirmatory of this construction of the decree, may be mentioned the fact that Stockmar had separated from his wife and gone to a foreign country, making it impossible for Mrs. Stockmar to dispose of her separate estate, if it can only be done by Stockmar uniting in a deed with her.
It seems to be well established by the modern authorities, and especially by the English Chancery, as a general proposition, that a married woman having real property settled to her separate use, in fee, and not restrained from alienation, has, as incident to her separate estate, and without any express power, a complete right of alienation by instrument inter vivos, or by will. And this doctrine of the English Chancery is founded on this principle: When the court of equity established the doctrine of the separate use of a married woman, and applied it to both real and personal estates, it *91 became necessary to give the married woman, with respect to such separate property, an independent personal status, and to make her in equity a feme sole. It is of the essence of the separate use that the married women shall be independent of and free from the control and interference of her husband. With respect to separate property, the feme covert is released and freed from the fetters and disabilities of coverture and invested with the rights and powers of *a person who is sui juris, and to every estate and interest held by a person who is sui juris the common law attaches a right of alienation. See Leading Cases in Equity, vol. 1, pt. 2d, p. 686-7, and cases there cited.
This court has never gone to the extent of the doctrine above declared by the English cases, and the decisions of many of the American courts. But, on the contrary, the power of alienation with respect to separate real estate is limited to the mode prescribed by the instrument creating the estate; and if none be prescribed in the instrument, then in the mode prescribed by law for the alienation of real estate by married women.
In the last case on this subject decided by this court (McChesncy & al. v. Brown’s heirs, 25 Gratt. 393), Judge Moncure, delivering the opinion of the court, said: “The following may be laid down as sound and well-settled principles of law: 1st. A married woman is regarded by a court of equity as the owner of her separate estate, and as a general rule the jus disponendi is an incident to such estate — that is, it is an incident thereto, unless and except so far as it is denied or restrained by the instrument creating the estate. 2d. But it is subject to such limitations and restrictions as may be contained in such instrument, which many give it sub modo only, or withhold it altogether. 3d. In regard to separate personal estate and the rents and profits of separate real estate, this power of disposition, if it be unrestrained, may be exercised in the same way by deed, will or otherwise, as if the owner were a feme sole; but in regard to the corpus of separate real estate, it can be disposed of only in such mode, if any, as may be prescribed by the instrument creating the estate, or unless prohibited by such instrument in the mode prescribed by law for the alienation of real estate of married women.” See also Lee et al. v. Bank U. S., 9 Leigh 200.
These principles, so clearly declared in the case of *McChesney v. Brown, must govern the case before us. I am of opinion that the decree of the county court of Henrico (interpreted, as before shown, by reference to the bill and answer, which may be read as if embodied in that decree), invests, if not expressly, by the clearest and most necessary implication, Mrs. Stockmar with an absolute and separate estate in the real estate in controversy and with the full power of alienation, as if she were a feme sole; and that the deed which she executed and delivered to Burging conveyed to him a perfect title. Especially is the title perfect in Burging, as Stockmar, who was the only person in the world who had any interest in the question whether the property in controversy was the separate estate of his wife, not only filed the bill praying that the property might be settled on his wife, with full power of disposal in her, but also executed and delivered his deed releasing all interest which he might have in said property.
Upon the whole case, I am of opinion that the decree of the chancery court is erroneous, and that instead of perpetuating the injunction on the conditions prescribed in said decree, the said court ought to have dismissed the plaintiff’s bill.
I am therefore, for the reasons stated, of opinion that the decree of the chancery court be reversed.
The other judges concurred in the opinion of CHRISTIAN, J.
The decree was as follows:
Tim court is of opinion, for reasons stated in writing and filed with the record, that the said decree of the said chancery court is erroneous. It is therefore decreed and ordered, that the same be reversed and annulled, and that the appellee pay to the appellant his costs by him *expended in the said chancery court, and also his costs expended in the prosecution of his appeal and writ of supersedeas here. And this court now proceeding to render such decree as the court below ought to have rendered, it is further decreed and ordered, that the injunction awarded by the judge of the said chancery court be dissolved and the appellee’s bill be dismissed.
Decree reversed.