# CHARLESTON.

LYSANDER DUDLEY *et al.* v. W. S. BROWNING *et al.*

Submitted November 14, 1916.   Decided November 28, 1916.

1. QUIETING TITLE—*Right to Maintain Suit—Vendor.*

   A vendor of land, holding a vendors lien thereon to secure purchase money, may maintain a bill in equity to perfect in his vendee, the title conveyed to him and bound by the lien, if, when conveyed, it was merely equitable but afforded ground for calling in the legal title; and to quiet the title conveyed, as to invalid claims thereto set up by predecessors in title of such lienor, if, when conveyed, it was legal and complete, but dependent upon ambiguous muniments of title requiring judicial interpretation. In either case, invalid instruments impeding acquisition of the legal title or casting clouds thereon, may be cancelled and annulled.   (p. 333).

2. SAME—*Power of Court—Jurisdiction.*

   But equity jurisdiction for such purpose does not extend to defenses founded upon claims of title to the land, on the part of such predecessors, by adverse possession thereof, and the court cannot, in such a suit, adjudge such claims to be either valid or invalid. Its jurisdiction and powers in the cause are limited to controversies respecting the title conveyed and clouds on it. (p. 333).

3. HUSBAND AND WIFE—*Infants—Estoppel.*

   Assuming a decree ambiguous as to whether it is one of partition or one of sale, to be a decree of the former class and to be void for want of pleadings in partition and to have made assignments of lots variant from those agreed upon by the parties, in writing, out of court, married women and infants accepting the assignments made by the decree and treating the lots so assigned as theirs and selling and disposing of them, are estopped from

setting up title to the remaining portions of the estate, since the partition so made involves no loss of title in any substantial sense.   (p. 333).

4.   SAME—*Estoppel of Married Women.*

But total exclusion of one of the coparceners, a married woman, from the partition, on the theory of a sale of her interest to another party and assignment of her lot to him, in the absence of any pleadings on which to found such a decree, although acquiesced in by her, does not estop her from asserting title to the lot assigned to her by the partition agreement.   (p. 333).

5.   EQUITY—*Decree—Ambiguities—Pleadings.*

An ambiguity in a decree entered in a suit brought to subject the land of a decedent to payment of his debts, as to whether it is a decree of partition among the heirs or a decree of sale of the land in parcels to some of the heirs and strangers to the title, is determinable by reference to the pleadings and other papers filed in the cause.   (p. 333).

6.   EXECUTORS AND ADMINISTRATORS — *Decrees — Ambiguities — Construction.*

A decree in such a suit, reciting a voluntary division of the land among the heirs and assumption of proportionate amounts of the debts and dispositions of some of the "interests" by some of the heirs, and exchanges of the "interests" assigned, by others; ascertaining the· amount of indebtedness remaining unpaid; decreeing portions of the same personally against the parties willing to pay them and take certain "interests" or lots of the land; and ordering conveyances of such lots to them, on payment of the amounts decreed against them; the only pleading in the cause being the bill praying sale of the land to satisfy and pay the debts, is a decree of sale, and the conveyances executed under it pass the legal title to the portions so conveyed, to the extent of the interests of all of the heirs that were parties to the suit. (p. 342).

7.   SAME—*Decrees—Collateral Attack—Validity.*

Omission from such a suit, of one or more of the heirs, is ground of error, as to those who were made parties, on which they could have had it reversed by appellate procedure, but it is valid and binding on them, though void as to the omitted party, after the time allowed for appellate review has passed, without·procedure to avoid it.   (p. 342).

8.   EQUITY—*Decree—Misnomers of Parties.*

Mere misnomers of a party defendent, in the summons and bill, correctible by matter apparent on the face of the papers, do not prevent jurisdiction of the court over the person of such party

from attaching, nor invalidate the decree entered against him on
the bill taken for confessed.   (p. 342).

Appeal from Circuit Court, Logan County.

Suit by Lysander Dudley and others against W. S. Browning and others.   From decree for defendants, complainants appeal.

*Reversed. Decree for complainants.   Remanded.*

*Smith D. Turner,* for appellants.

*Price, Smith, Spilman & Clay,* for appellee Spruce Fork Co.   *E. T. England* and *Campbell, Brown & Davis,* for appellees W. S. Browning and others.   *E. T. England,* for appellees Paris W. Mullins and others.

POFFENBARGER, JUDGE:

The decree complained of dismissed, as for want of equity, a bill filed by vendors of land, holding a vendor's lien thereon, and having for its purpose enlargement of an alleged equitable title into a clear legal one for better security of the debt and removal of cloud from the title of the vendees, in view of possible liability on covenants of warranty.

Two tracts of land containing, respectively, 52 acres and 322 acres, the former known as Lot No. 2 and the latter, as Lot No. 5, in a partition agreement entered into by the heirs of Boyd W. Mullins, for division of a tract of land containing about 1,700 acres, inherited from their father, constitute the real subject matter of the suit.   These two parcels formed a part of a large area of over 3,200 acres, purchased in smaller tracts and consolidated by the plaintiffs or their predecessors in title, and later sold to the Spruce Fork Company, a corporation, for the sum of $230,000.00, of which $70,000.00 was paid in cash, and for the residue of which, deferred in payments, a vendor's lien was retained. The Spruce Fork Co. later conveyed the property to the Boone County Coal Corporation.

The plaintiffs having parted with whatever title they had to the land, either legal or equitable, and having no interest therein other than their lien thereon for purchase money, and

being under no obligation respecting the same other than that imposed by their covenants of warranty, their claim of right to maintain the suit is vigorously challenged. If the allegations of the bill are true, they were owners of the equitable title, at least, before they disposed of their interests in the land. The suit seems to have been instituted before they parted with their alleged titles, but the present bill, filed after their conveyance to the Spruce Fork Co., was necessitated by the destruction of the bill originally filed, in a fire which destroyed the court house of Logan County. The present bill was filed as a substitute for the one destroyed, by way of restoration of the record so lost.

Strictly and technically, a bill to remove a cloud is maintainable only by the owner of a good legal title in possession of the land. The owner of an equitable title may sue for the cancellation of instruments that becloud and obstruct his right and for procurement of the legal title, but his bill is not strictly a bill to remove a cloud from title, for, in law, he has no title on which a cloud can rest. Jurisdiction in the two classes of cases named is so elementary and so frequently exercised that authority for it need not be cited. The case presented by this bill belongs to neither class. It is one of first impression in this state. Though we have no authority in the decisions of this court, bearing directly upon the question thus raised, *Jackson* v. *Kittle*, 34 W. Va. 207, declares the right of a grantor obligated by a covenant of warranty, to enjoin the perfection of an adverse title which would becloud the title conveyed by him, or work a breach of his covenent of warranty. In the same case, it was declared, however, that, as a general rule, a party cannot maintain a suit to remove a cloud, or a bill *quia timet*, who has no other interest than the fact that he has conveyed the property with a covenant of general warranty. For the contrary of this latter proposition, considerable authority is found in other jurisdictions. It has frequently been held that one who has sold and warranted title to realty may maintain judicial proceedings to remove a cloud on such title or to prevent a cloud thereon. *Jackson Milling Co.* v. *Scott*, 130 Wis. 267; *Ely* v. *Wilcox*, 26 Wis. 91; *Pier* v. *Fond Du Lac Co.*, 53 Wis. 421;

*City of Hartford* v. *Chipman*, 21 Conn. 488; *In re Phillips*, 60 N. Y., 16; *Sutliff* v. *Smith*, 58 Kan. 559; *Styer* v. *Sprague*, 63 Minn., 414; *Begole* v.'*Hershey*, 86 Mich., 130.

In some, if not all, of these cases, purchase money delayed in payment or withheld, on account of a defect or cloud, was an element or factor exerting a strongly persuasive influence upon the courts. By way of argument to sustain equity jurisdiction for relief under the circumstances presented by this record, but not by way of decision, it may be said that the weight of authority seems to favor the right of a warrantor to maintain a bill to clear the title he has bound himself to maintain and defend, even though he has no direct interest in the land. Ownership of a lien on the land is not title, but it. is a right respecting the land. It is a ligament or tie between the debt and the title, which enables the holder to control, have dominion over and power of disposition respecting, the very title itself. His lien is a highly valuable interest or right and the title to the land constitutes its basis or foundation. Right and power to clear and perfect the title, if accorded and recognized by a court of equity, constitute a means of perfecting and protecting the lien. If such power does not exist, a vastly important right, lien security upon real estate, is left without adequate remedies for its protection and enforcement. The power of a court of equity, in a suit to enforce liens by sale of the lien subject, to clear away, by cancellation, mere clouds upon the title, to the end that the subject may be sold for an adequate price, in the interest of both the debtor and the creditor, cannot be doubted. To say the creditor, for the betterment and strengthening of his security, may have the same thing done, without enforcement of his lien, falls within the equity, scope and utility of the principle or rule stated, and gives the remedy under circumstances which make it equally beneficial to both parties. The creditor may not desire enforcement of his lien and continuance thereof may be both desirable and beneficial on the part of the debtor. In other words, it may be to the interest of both, to have the lien continue and the debt remain unpaid for a number of years. Indeed, the debt may have been made to run over a.

long period of years, as a matter of investment on the part of the creditor, and reasonable necessity or expediency on the part of the debtor. To deny the remedy for protection of the title, except in a suit to enforce the lien, might defeat the purposes of both parties and break up a mutually advantageous arrangement. These considerations and others impel us to the conclusion that the holder of a lien upon land may maintain a suit in equity to dissipate clouds from the title thereof.

The primary purposes declared by the bill are: (1), specific performance of a written agreement of partition of the land, made by the heirs of B. W. Mullins, deceased, and dated, February 12, 1880, by execution and delivery of proper deeds conveying their respective interests or lots to the plaintiffs, the Spruce Fork Company or the Boone County Coal Corporation, as to the court may seem proper, upon the assumption of equitable ownership of all of the several interests in the plaintiffs by conveyances thereof, in the absence of a severance of the common ownership of the legal title by mutual conveyances among the heirs; (2), execution of a decree made and entered, July 4, 1887, in a chancery suit brought by the administrator of the estate of B. W. Mullins against his heirs, to subject the real estate of which he died siezed and possessed, to the payment of his debts, by the appointment of a commissioner to convey to the plaintiffs, Spruce Fork Co. or the Boone County Coal Corporation, the right, title and interest of Margaret Browning, one of the children of B. W. Mullins, and her heirs, or their grantees, in and to a tract of land known as Lot No. 5, in said partition agreement, and all of the right, title and interest of the heirs of Charles Mullins, a son of B. W. Mullins, or their grantees, in and to a tract known as Lot No. 2, in said agreement; and, (3), cancellation of a deed executed by Jerusha Brown, one of the heirs of Margaret Browning, nee Margaret Mullins, to W. S. Browning, one from Alexander Browning and Sarilda Browning to Eddie Mullins and one from Rosa Estes and her husband to E. R. Ellis, all purporting to convey certain interests in said Lot No. 5, as having been derived by inheritance from Margaret Browning, deceased. By way of inci-

dental relief, the bill prays that W. S. Browning, E. R. Ellis, Eddie Mullins, Hattie Browning and Emma Wiley be enjoined and restrained from trespassing upon Lot No. 5 and from cutting and removing timber therefrom; and that Paris Mullins, W. D. Mullins, James Smith, Adolphus Smith, John H. Farley and James P. Smith, claimants of tract No. 2, be likewise enjoined and restrained from exercising authority and control over the same and from cutting and removing timber therefrom. To these special prayers, one for general relief is added.

Mullins died in 1869. The suit of Hinchman, administrator, against his heirs was brought in June, 1875. The partition agreement above referred to bears date, February 12, 1880, and was signed by the six living children of B. W. Mullins. It recites a previous oral agreement upon its terms and provisions, which, it is claimed, was made in 1875. It divided the land into six lots, and assigned Lot No. 1 to Amanda White; Lot No. 2, to Charles Mullins; Lot No. 3, to Harriet Jarrell; Lot No. 4, to Minerva Jarrell; Lot No. 5, to Margaret Mullins; and Lot No. 6, to Henry Mullins. No formal pleading made it a part of the record in the pending suit, but it was reported to the court and made a part of the record in the cause, by a commissioner to whom the cause was referred, sometime after a sale had been made and confirmed, to ascertain who the creditors of Mullins were; what division of the land had been made; how much was still due thereon; and any other matter any of the parties might deem pertinent. At the sale previously ordered and made, to satisfy indebtedness due to Anthony Lawson, J. E. Stollings and U. S. Hinchman, Charles Mullins had purchased one tract of the land containing 1,400 acres, for $149.00 and another containing 48 acres, for $100.00; and Conel Jarrell had purchased a 20 acre tract, for $80.00 and another of 49 acres, for $106.00, making in all $435.00. The commissioner reported that, with the consent, and by direction, of the creditors, he had taken the joint notes of Floyd C. Jarrell, Henry C. Mullins, C. W. Mullins and Paris W. Jarrell, for $145.00 each, and that shortly afterwards Henry Mullins had paid the Stollings debt, and that, some time in December 1876, Charles Mul-

lins, one of the purchasers, had notified or requested him to re-advertise and sell the land, because the Jarrells had refused to pay anything on their notes. He further reported that he had, on February 12, 1877, proceeded to resell the land, but had desisted at the request of the principal creditor, on the ground that the Jarrells had paid some of the costs, and the Mullins' were willing to reimburse them and pay off the notes for the purchase money and have the land conveyed to them. On April 30, 1878, a decree was entered, confirming the sale as reported. In 1886, the order of reference above mentioned was entered and the commissioner returned with his report, the partition agreement to which reference has been made. That agreement, after designating and assigning the lots, recites the pendency of the suit and the indebtedness, and then binds the parties thereto, jointly and severally, to pay their proportional parts of the indebtedness and the taxes, one-sixth each. It further bound them, on payment of all the indebtedness, to make good and sufficient deeds, with covenants of special warranty, conveying to each other their respective lots. The parties further agreed, if they did not make such conveyances themselves, to direct P. K. McComas, the special commissioner in the suit, or whoever might be substituted or appointed in his place, to convey the land as partitioned in the agreement. The commissioner further reported that there remained still due and owing to Lawson, $94.50, and to Hinchman, $94.18. The report, being unexcepted to, was approved and confirmed. Upon it, the court found that Minerva Jarrell had paid $52.00; Margaret Browning, $60.00; Harriet Jarrell, $59.00; Amanda White, $72.20; Charles Mullins, $30.00; and Henry Mullins, $65.50; on account of the indebtedness, pursuant to their agreement, and that there remained due from Minerva Jarrell $35.90, Margaret Browning, $27.90, Harriet Jarrell, $28.90, Amanda White, $15.70, Charles Mullins, $57.90 and Henry Mullins, $22.40. In its decree, the court inserted the following recital which has no foundation in the commissioner's report: "And it further appearing that B. W. White is owner of the interest of Minerva Jarrell, Amanda White and Charles Mullins, M. B. Mullins, the owner of the interest of Harriet

Jarrell, Charles Mullins' heirs the owner of the interest of
Margaret Browning and Henry Mullins' heirs the owner of
the interest of Henry Mullins.'' Upon the facts so found,
the court appointed H. C. Ragland a special commissioner
and adjudged, ordered and decreed that B. W. White pay to
him $79.50, Charles Mullins' heirs $57.90, M. B. Mullins
$28.90, and Henry Mullins' heirs $22.40, which sums very
nearly equaled the aggregate of the indebtedness due to
Lawson and Hinchman. It was further decreed that Rag-
land, special commissioner, should, upon the payment of said
sums and costs of the suit, to be apportioned equally among
the several shares, convey to White, the interests of Minerva
Jarrell, Amanda White and Charles Mullins; to the heirs of
Charles Mullins, the interest of Margaret Browning; to M.
B. Mullins, the interest of Harriet Jarrell; and to the heirs
of Henry Mullins, the interest of Henry Mullins, as shown
in the division agreement. On the 6th day of October, 1887,
an order was entered in the cause, striking it from the docket,
on the ground that nothing further remained to be done
therein.

By a deed dated, August 8, 1887, and reciting payment by
B. W. White, of the amount so decreed against him, July 4,
1887, H. C. Ragland, special commissioner, conveyed to him
lots Nos. 1, 2 and 4 mentioned and described in the partition
agreement and the memorandum annexed thereto, being the
lots therein assigned to his wife, Minerva Jarrell and Charles
Mullins. By a deed dated, October 14, 1896, and reciting a
sale of Lot No. 5, (assigned to Margaret Mullins by the agree-
ment, but decreed to have been acquired by the heirs of
Charles Mullins), to W. F. Altizer, by said heirs, naming
them, and a direction in writing by them so to do, he con-
veyed that lot to Altizer. By a deed dated, January 21,
1902, the heirs of Charles Mullins executed a deed to Altizer
in which they recited and confirmed the conveyance made to
him by Ragland, special commissioner, pursuant to the de-
cree of July 4, 1887. That deed contains this recital:
''Whereas, the parties of the first part, before receiving a
deed for their father's share in the said real estate from said
Special Commissioner sold the same to the said W. F. Altizer,

and directed said Special Commissioner to convey said real estate direct to the said W. F. Altizer, and the said parties of the first part being desirous of confirming the deed executed by the said Special Commissioner to the said W. F. Altizer execute this deed in ratification thereof.'' After this recital, the deed proceeds as follows: ''Now, therefore, this Deed Witnesseth, That the parties of the first part do hereby remise, release and forever quit claim to the said W. F. Altizer, all their right, title and interest in and to the real estate conveyed to the said W. F. Altizer, from H. C. Ragland, Special Commissioner, by deed dated, October, 14" 1896.'' By a deed dated, August 15, 1901, B. W. White conveyed Lots Nos. 1, 2 and 4 to M. B. Mullins who conveyed them to Alderson, trustee, and Alderson conveyed them to the plaintiffs. In his deed, White excepted an acre previously sold to one Van McNeely, and an acre including the grave yard on the premises, and reserved a life estate in the house on Lot No. 2, the old Mullins homestead, and an acre of land around it. Altizer conveyed Lot No. 5 to Mullins who conveyed it to Alderson, trustee, and he to the plaintiffs.

The lines of contention are drawn around and upon the partition agreement; the decree confirming the sale made to Charles Mullins and Conel Jarrell, in 1876; the recital of the acquisition of Lot No. 2, by B. W. White, and Lot No. 5, by the heirs of Charles Mullins, in the decree of July 4, 1887; rather indefinite and conflicting oral testimony as to an alleged exchange of Lot No. 2, by Charles Mullins, with Margaret Mullins, for Lot No. 5, aside from the recital and as early as 1875, and their respective holdings, claims and residences, before the partition agreement was made, and from the date thereof until the decree of July 4, 1887, was entered; and the subsequent deeds and other acts of the parties, tending to establish title in the plaintiffs by estoppel. Loss of title by Charles Mullins' heirs, by estoppel, is resisted and denied, on the ground of their infancy, at the date of the alleged exchange of Lots; and such loss by Margaret Browning is denied, on the ground of her coverture. Invalidity of the decree of July 4, 1887, in so far as it purports to recognize and enforce the alleged exchange, between Charles Mul-

lins' heirs and Margaret Browning, is asserted and declared, on the ground of alleged lack of jurisdiction in the court, since the record discloses no pleadings setting it up, or praying partition of the land. It is also denied that Margaret Browning was a party to the suit.

Harriet Jarrell, wife of Paris Jarrell and one of the heirs, was omitted from the summons. It purports to make five other children of B. W. Mullins parties. Henry, Charles, Amanda and Minerva Jarrell, nee Mullins, are correctly named. The other one is designated as Margaret Manerva Mullins. These five and Harriet Jarrell constituted all of the heirs. The summons was executed on Margaret Mullins by her right name. The very informal bill is worse than the summons. It omits Henry Mullins as well as Harriet Jarrell, and correctly names Charles Mullins, Amanda Mullins and Minerva Jarrell. It names another person as defendant and describes her as "Margaret Jarrell, late Margaret Mullins." Both the summons and the bill describe all the parties as heirs of B. W. Mullins, deceased. Erroneous insertion of a middle name in the summons, for Margaret Mullins, obviously did not invalidate it as to her, for, in law, the middle name is ignored and treated as no part of the name. *Slingluff* v. *Gainer,* 49 W. Va. 7; *Long* v. *Campbell,* 37 W. Va. 665. That struck out, the summons read Margaret Mullins. The bill erroneously describes her as the wife of Paris Jarrell, but gives her maiden name as Margaret Mullins. A comparison of the bill with the summons would have left no doubt of the intention of the pleader to charge Margaret Mullins. These virtually self-correcting misnomers did not prevent the jurisdiction of the court from attaching. *Tomblin* v. *Peck,* 73 W. Va., 336; *Chapman* v. *Branch,* 72 W. Va. 54. The omission of Harriet Jarrell, a necessary and proper party to the suit, does not render the proceedings void as to those who were parties. It would have been good ground for reversal on appeal. Unless she made herself a party by signing the partition agreement, the proceedings were void as to her, but, until reversed, the decree was binding upon all who were parties to the suit, and the right of appeal has long since expired. *Gebhart* v. *Shrader,* 75 W. Va. 159.

If the decree of July 4, 1887, was intended as one effecting partition among the heirs and made without jurisdiction, because of lack of pleadings, and made a void declaration of exchange of lots Nos. 2 and 5, between the heirs of Charles Mullins, on the one hand, and Margaret Browning, on the other, and the heirs of Charles Mullins, though infants at the date of the decree, accepted Lot No. 5, and treated it as theirs, from the date of the decree until the attainment of their majorities, and afterwards, and sold and conveyed it as theirs; and Margaret Browning, though a married woman, accepted Lot. No. 2 and treated it as hers and sold and conveyed it, the immunity of infants and married women from the operation of the principle of estoppel, as regards title to land, could not be invoked. In a partition fairly made, nobody loses any title to land. In the subject of partition, each co-tenant technically has title to the whole thereof, and a partition is a mere division of the common property into separate and equal parts. In other words, partition reduces the partial title to the whole into complete title to a part, without either gain or loss. To say a married woman or an infant sustains a loss of title, in such a transaction, so as to render him immune from the doctrine of estoppel, would be to subordinate substance to mere technicality, and to depart from and violate the general rules and principles governing partition. Even though a husband is not a party to a partition suit, the reduction of the wife's partial title in the whole to complete title in a part, limits his curtesy to that part. 15 Ency. Pl. & Pr., 794, 795. The same rule applies to a lien upon an undivided interest. *Childers* v. *Loudin,* 51 W. Va. 559, 566, 567.

The argument seems erroneously to assume that Margaret Browning, at sometime, had sole and separate legal title to Lot No. 5, and Charles Mullins or his heirs, separate and distinct legal title to Lot No. 2. There was no such title in either case. The partition agreement did not sever the legal title. At the date of that agreement and afterwards, they and the other heirs of B. W. Mullins held the legal title to the entire tract in common, whatever their equities may have been. The partition agreement amounted to nothing more than a

plan of partition assented to by all the parties. Presumptively, they divided the land into lots of equal value, and the choice of lots, when it exists, is a mere equity, not title. Moreover no cotenant has any legal right of choice. In the absence of an .equity limiting the exercise of its discretion, the court may assign the lots. *Cecil* v. *Dorsey,* 1 Md. Chan. Dec. 225. Moreover, a partition consummated by deeds formally and technically severing the common legal title, carries an implied warranty, breach of which confers right upon the injured party, to re-enter upon the land and to have compensation in land, for his loss, by a new partition. *Bowers* v. *Dickinson,* 30 W. Va. 709, 717; *Dingess* v. *Marcum,* 41 W. Va. 757; *Cain* v. *Brown,* 54 W. Va. 656, 660. Since an estoppel as to choice of lots in a partition of land involves no loss of title, a married woman or an infant may estop himself, by a verbal exchange of lots assigned ·in a partition agreement or a mere executory order in a partition suit.

Two of the Charles Mullins heirs admit, in their testimony, that Altizer paid them a consideration for their execution of the quit claim deed of January 21, 1902. No doubt something was paid to all the others. One of these heirs, C. H. Mullins, executed this deed before he became of age. After obtaining his majority, he brought a suit against M. B. Mullins, to whom Altizer conveyed, and M. B. Mullins' grantees, to avoid the deed, and then compromised the suit and executed a new deed, in consideration of $1,500.00, at least $500.00 of which went to one of his brothers. Another one of the heirs, Essie Burgess, was a married woman at the time of the execution of the quit claim deed, and it is contended her recitals in that deed do not estop her from claiming title to Lot No. 2. For reasons already stated, we are clearly of the opinion that all of them were effectually estopped from claiming any title to Lot No. 2. They took Lot No. 5, and dealt with it as their own and conveyed it away for a consideration. Presumptively, they directed Ragland, special commissioner, to convey it for them and afterwards confirmed his deed. Thus, they got what they were legally entitled to, although they may have unwisely and improvidently disposed of it, in ignorance of its real value.

The estoppel, however, would not reach the disposition made of Margaret Browning's interest in the land. If she had obtained Lot No. 2, and dealt with it as her own, she would have been estopped, even though the alleged partition decree was void. But that decree did not assign to her Lot No. 2. It merely recited that B. W. White had obtained it from her, and, if the court had no power to decree partition, or to dispose of her land, her mere acquiescence would not estop her. By such an estoppel, if enforced, she would lose title to her land, and a married woman does not so lose her title. *Waldron v. Harvey,* 54 W. Va. 608; *McNeely* v. *Oil Co.,* 52 W. Va. 643; *Williamson* v. *Jones,* 43 W. Va. 562; *High* v. *Pancake,* 42 W. Va. 607.

The decree, however, properly construed and interpreted, was not a decree of partition, but a decree of sale. Notwithstanding the partition agreement brought to the attention of the court, the titles recognized in that instrument were within the control of the court and under its power of disposition to satisfy the debts on the estate, which were superior to the rights of the heirs. The court ascertained that B. W. White was to take the three interests or lots described and designated in the agreement for his wife, Amanda White, Minerva Jarrell and Charles Mullins, respectively, for the equitable portions of the indebtedness due on them, and pay it in consideration of a conveyance of the title thereto by the court, through its special commissioner. It also ascertained that the heirs of Charles Mullins were willing to take and pay for Lot No. 5, designated in the agreement, as the lot of Margaret Browning, in the same manner, and that M. B. Mullins would take the lot designated therein for Harriet Jarrell, and the heirs of Henry Mullins were willing to take the lot set apart therein for their father, at prices equal to the equitable proportions to the indebtedness due thereon. These propositions the court accepted and directed its special commissioner, on payment of the amounts the parties had signified their willingness to pay, respectively, to convey the land to them. For the purpose of sale, the court could have divided the land into such lots. Finding the heirs had caused a survey and division of the land into convenient lots for their purposes,

the court adopted the division, for its purposes, and made the sale in parcels. No doubt this decree was erroneous and could have been reversed by an appeal, for it did not protect the interests of the heirs who were entitled to have the land sold for all it would bring, the excess of proceeds, over and above the indebtedness, being theirs, or to have the sale limited to such portion of the land as would bring enough to pay the debts. But it was not appealed from and all parties have acquiesced in it. The decree might be interpreted as being one of partition; for it recites a division of the land among the heirs, partial payments by them on the basis of the agreement and balances due "upon their several interests," and orders and decrees conveyances of the interests defined by the agreement, upon payment of defined amounts. It may just as consistently be interpreted as being an erroneous one· of sale. Nothing in it conclusively shows it to be either. To make it a decree of sale brings it within the jurisdiction of the court and upholds it. To make it a decree of partition might, as contended in argument, put it beyond the jurisdiction of the court and make it void. To say the court decreed a partition or intended to do so, in the absence of pleadings calling for it, would be a violent presumption. So to. interpret a decree as to make it. rest upon no pleadings, when it may be so interpreted as to bring it within the pleadings and the power of the court to pronounce it, would do violence to the rules and principles of construction. Treated as one of sale, the decree has the bill and the commissioner's report for its foundation. Treated as one of partition, it may have nothing upon which to rest. Its substance rather than its mere form must be allowed to control. The recital that B. W. White acquired the interests of Minerva Jarrell, Amanda. White and Charles Mullins, may mean only that the court found Minerva Jarrell, Amanda White and Charles Mullins, for some reason, did not desire to take certain portions of the land, and pay therefor the portions of the indebtedness equitably due thereon, but that B. W. White was willing to do so; and that Margaret Browning was not willing to take Lot No. 5, and pay for it in the same way, but that the heirs of Charles Mullins were. In ordering conveyances of "interests"

on payments of sums of money, the court merely ordered conveyances of tracts of land. The decree does not, in terms, confirm the voluntary partition evidenced by the agreement, nor does it name itself a decree of sale. Though some of its terms and provisions are of the character of those found in partition decrees, it disposes of the land for money agreeably to the purpose of the suit. It does not order conveyances subject to debts. Under it, nobody could get a foot of the land in that way. The land was brought under the power of the court as a means of obtaining money by a sale thereof with which to pay the debts. Notwithstanding inconsistent recitals and forms of expression, the court released it from its power and dominion, in consideration of money paid to its officer, in discharge of the debts. Though not so termed in the decree, this amounted to full and exact accomplishment of the very purpose of the bill and all the subsequent proceedings down to the entry of the decree. If B. W. White did not take the three tracts of land described in the decree as the "interests" of Minerva Jarrell, Amanda White and Charles Mullins, as a purchaser from the court or through its power of sale, then there was no foundation for the personal decree against him for $79.50, for he was, in no sense, bound to pay, nor liable for, the debts of B. W. Mullins. He was not even one of the heirs. Though the others to whom conveyances were ordered were heirs, they were not personally liable for the debts of their ancestor, and there was no basis for the personal decrees entered against them, if they were not purchasers from the court. Such decrees were entered. They could have been entered on the bill and offers of purchase accepted by the court, and not otherwise, in the state of the pleadings. These decrees and their purpose and effect are just as inconsistent with a partition of the land, as are some of the recitals and formal expressions with a purpose of sale. Hence, the decree is clearly ambiguous.

All courts say the effect of an ambiguous judgment or decree is to be determined by reference to the pleadings and other proceedings in the case. *St. Lawrence Boom Lumber Co.* v. *Holt and Mathews*, 51 W. Va. 352, 376; *Walker* v. *Page*, 21 Gratt. 646; *Norvell* v. *Lessueur*, 33 Gratt. 222;

*Burging* v. *McDowell,* 30 Gratt. 236; VanFleet, Former Ad-
judication, p. 772, sec. 376, p. 715, sec. 335, p. 949, sec. 480.
As determined by the pleadings, the decree of July 4, 1887,
is clearly and undoubtedly one of sale and all persons hold-
ing under it have such title to their respective tracts as Boyd
W. Mullins had except as against the heirs of Harriet Jar-
rell; and upon the disclosures made by this record, Lysander
Dudley and J. H. Grogg acquired that title to the two lots
in controversy, in so far as it was held by parties to the suit
of *Hinchman, Adm'r.* v. *Mullins' Heirs,* and the plaintiffs
hold a lien on them and other lands for purchase money due
on the sale thereof to the Spruce Fork Company. To perfect
the title on which that lien rests, no conveyances from the
Mullins heirs other than the heirs of Harriet Jarrell, are
necessary. To determine the binding force of the lien on that
title, it suffices to construe said decree and determine what it
means. In this way the title is quieted as regards the claims
set up against it here, on the theory of right thereto by in-
heritance, by the heirs of the parties to the Hinchman suit.

In so far as the defenses made rest upon claims of title by
adverse possession, no cognizance of them can be taken in
this suit. The jurisdiction cannot go beyond the limits of
privity. Conflict between the B. W. Mullins title and strange,
hostile titles, dependent upon issues of fact, proper for jury
determination, if there be such, must be saved and excluded
for determination in a court of law. *Miller* v. *Morrison,* 47
W. Va. 664; *Freer* v. *Davis,* 52 W. Va. 1; *Bright* v. *Knight,*
35 W. Va. 40; *Davis* v. *Settle,* 43 W. Va. 17. The doctrine
that equity jurisdiction for one purpose gives such jurisdic-
tion for all, is subject to this limitation. Under no circum-
stances, will a court of equity determine questions of title
by adverse possession, dependent upon issues of fact, for, in
such case, there can be no equity between the parties, relating
to the adverse title. An equity respecting only one title
cannot be treated as an equity pertaining to another wholly
distinct, strange and hostile, for the purpose of conferring
equity jurisdiction and depriving the adverse claimant of
his constitutional right of trial by jury. An exception dis-
pensing with that high privilege must be founded upon some-

thing substantial. It cannot be denied on grounds of mere convenience or preference.

Reversal of the decree complained of is an inevitable consequence of the conclusion here stated, but, as has been stated, the Boone County Coal Corporation has the B. W. Mullins title to lots Nos. 2 and 5, as against all parties to the decree of July 4, 1887, and their heirs, by virtue of that decree and the conveyances made under it, and the lien of the plaintiffs upon that title is valid, binding and superior to any claim thereto set up by any of such parties and their heirs, wherefore there is neither occasion nor right to require the execution of any new deeds. In so far as the deeds executed by Jerusha Brown to W. S. Browning, by Sarilda Browning and Alexander Browning to Eddie Mullins and by Rosa Estes to E. R. Ellis, purport to pass the B. W. Mullins title to portions of Lot No. 5, they are mere clouds upon that title and must be cancelled and declared to be void and of no effect as to it. Deeds made by C. H. Mullins, an heir of Charles Mullins, to P. M. Mullins, Apr. 2, 1906, and by Jerusha A. Brown, an heir of Margaret Browning, and her husband, to Chas. E. White and Mikie W. White, Feby. 27, 1908, purporting to convey interests in said Lot No. 2 will be cancelled in like manner and to the same extent. But the prayers for injunctions and writs of possession must be denied, in view of the claims of title by adverse possession.

What relief the plaintiffs are entitled to, if any, against the heirs of Harriet Jarrell, who was not a party to the suit of *Hinchman* v. *Mullins' Heirs,* and to whom Lot No. 3 was assigned in the partition agreement, but from whom it was transferred to M. B. Mullins by the decree of July 4, 1887, the record is too meager and indefinite to enable us to say. Plaintiffs do not claim to have owned that lot, but they may be entitled to a decree extinguishing the apparent interests of her heirs in Lots Nos. 1, 2, 4, 5 and 6. Lot No. 6, was assigned in the agreement to Henry Mullins and decreed to his heirs. Plaintiffs claim to have obtained the entire title to it, but an undivided one-eighth of it was claimed by Madora B. Mullins, a daughter of Henry Mullins. The final decree, however, recites a withdrawal of her answer. For settlement

and determination of possible controversies concerning claims and liabilities of the heirs of Harriet Jarrell and any other matters not expressly disposed of by the decree herein directed to be entered in this court, the cause will be remanded to the Circuit Court of Logan County.

*Reversed.   Decree for Complainants.   Remanded.*