## CHARLESTON.

HARR v. SHAFFER *et al.*

Submitted Sept. 15, 1898—Decided Dec. 17, 1898.

1. TITLE—*Cloud on Title—Bill in Equity.*
    A party who files a bill to remove a cloud from his title to a tract of land, who shows on the face of his bill that he has no title to the land himself, and no right to interfere with others who appear to have good title thereto, is not entitled to be heard in a court of equity, and his bill will be dismissed. (p. 714).

2. DISCOVERY—*Equity—Equitable Relief.*
    Where a party seeks to be heard in a court of equity on the ground that he is entitled to a discovery, and his bill and exhibits show that he already has information he pretends to seek by his prayer for discovery, such prayer will not entitle him to relief in equity. (p. 714).

Appeal from Circuit Court, Tucker County.

Bill by Seymour Z. Harr against Samuel J. Shaffer and others. From a decree dismissing the bill, plaintiff appeals.

*Affirmed.*

L. HANSFORD, DAYTON & DAYTON, and FRED O. BLUE, for appellant.

C. WOOD DAILEY, J. P. SCOTT, and A. B. PARSONS, for appellees.

English, Judge:

This was a suit in equity instituted in the circuit court of Tucker County by Seymour Z. Harr against Samuel J. Shaffer, A. B. Parsons, Joseph Harper, P. T. Shearer, James S. Whiting, John T. Vanmeter, Gottlieb Hutter, C. W. Dailey, trustee, and others. The controversy seems to have arisen from the fact that the plaintiff, Harr, claims to be entitled to a certain tract of land of three hundred twelve and one-half acres, which on October 2, 1889, was conveyed to him by Samuel H. Shaffer and wife. This tract of land appears in the record to have been variously described, sometimes as containing two hundred and ninety-eight acres, again three hundred twelve and one-half, and again three hundred and twenty, and to this some of the confusion in the cause may possibly be attributed. Did the plaintiff acquire any title to said land under the deed from S. H. Shaffer and wife?

It appears from the record that this tract and several others in Tucker County belonged at one time to one Adam C. Harness, and that on the 19th of August, 1882, said Harness conveyed said tract, describing it as three hundred and twenty acres, to William M. Randolph, trustee, to secure to one Joseph Harper the sum of four hundred dollars, evidenced by a note payable one year after date. At the October rules, 1883, Lorenzo S. Anvil brought a suit in equity against Adam C. Harness and others to subject the real estate of said Harness to the satisfaction of certain judgments and liens thereon, but said Harper was not made a party thereto, neither were his sureties. A copy of the record of the proceedings in said suit is exhibited in his cause, from which it appears that the cause was referred to a commissisner who was directed to report the real estate owned by defendant A. C. Harness, the state and condition of the title thereto, and the annual rental value thereof, the liens thereon, their character, amounts, and priorities, and to whom owing. Among the liens reported was a trust lien against the two hundred and ninety-eight acre tract, balance of the four hundred acre tract, due to Joseph Harper for principal and interest, four hundred and forty-one dollars and sixty cents.

(This two hundred and ninety-eight acre tract seems to be the same elsewhere described as three hundred twelve and one-half acres.) Such further proceedings were had in said cause that a decree was rendered therein directing the sale of certain lands reported as owned by said A. C. Harness, and, the commissioner appointed to make said sale having reported his sale, the same was confirmed, and he was directed to collect the proceeds and disburse same according to the priorities ascertained by said commissioner and fixed by a former decree, except the deed of trust lien of four hundred forty-one dollars and sixty cents due said Joseph Harper, which was a specific lien on the two hundred and ninety-eight acre tract mentioned in said commissioner's report, which was directed not to be paid out of the proceeds of said sale; and it was directed that said Harper was not to be prejudiced or prevented by said decree from enforcing his said trust lien against said land by any proper proceedings instituted by him for that purpose. It further appears that at the sale of said lands made by special commissioner said Harness became the purchaser, and the defendant Shaffer became his surety; that, Harness failing to comply with the terms of sale, the commissioner obtained a decree to resell them for the purchase money, and the land was again offered, and said Shaffer became the purchaser; and by reference to the deed from A. B. Parsons, special commissioner, to Shaffer, it will be seen that the two hundred and ninety-eight acre tract,—described in the commissioner's report as four hundred acres, less one hundred and two acres sold to Leatherman,—was not conveyed to Shaffer, and it should not have been, for the reason that the decree confirming his report of sale to Harness expressly provided that said Harper was not to be prejudiced or prevented from enforcing his trust lien against said two hundred and ninety-eight acre tract, and when Harness failed to comply, and Shaffer became the purchaser, he took the land that Harness had formerly purchased, and in no manner prejudiced or interferred with the lien of Harper upon said two hundred and ninety-eight acres, and Commissioner Parsons recognized this fact by not conveying the tract to him. On the 6th of March, 1891, it appears that William M.

Randolph, the trustee named in the deed of trust, executed by Adam C. Harness on said three hundred twelve and one-half acre tract, which is described as two hundred and ninety-eight acres, to secure Joseph Harper his note of four hundred dollars, ceased to act. C. W. Dailey was appointed trustee in his room and stead by the circuit court of said county, and, having subsequently advertised said tract as trustee, sold it to John Chipley and P. T. Shearer, and conveyed same to them by his deed as such trustee, dated May 30, 1893. The plaintiff, in his bill filed in this case to remove said conveyance made by C. W. Dailey to Chipley and Shearer as a cloud upon his title, alleges that the land directed to be sold by the decree of September, 1884, was not embraced in the trust deed in favor of Harper to Randolph, and a reference to that decree shows that the trust debt of Harper for four hundred forty-one dollars and sixty cents was adjudicated as a lien on two hundred and ninety-eight acres, the residue of said four hundred acres, which is conceded to be the three hundred and twelve and one-half acre tract, and the decree in the case of *Anvil* v. *Harness*, which confirmed the sale of the Harness lands, expressly provided that the trust lien due to Harper, and a specific lien on said two hundred and ninety-eight acre tract mentioned in the report of Commissioner Adams, should not be paid by Commissioner Parsons out of the proceeds of the sale of said lands, and the right of enforcing said trust lien against said two hundred and ninety-eight acre tract was expressly reserved to said Harper, which right, as we have seen, he subsequently exercised by requiring C. W. Dailey, who was substituted as trustee in the room and stead of William M. Randolph, deceased, to advertise and sell said two hundred and ninety-eight, or three hundred twelve and one-half acre tract, at which sale said Chipley and Shearer became the purchaser and acquired the title thereof on May 30, 1893. It appears from the bill and exhibits that said Harness, by deed bearing date of September 4, 1885, conveyed said three hundred twelve and one-half acre tract with others to A. B. Parsons, trustee, to secure and indemnify said S. H. Shaffer as his surety on several notes, but this trust was long subsequent to the trust executed thereon t

William M. Randolph, trustee, and for that reason said Harness could only convey the equity of redemption, and it does not appear that any sale was ever made under said trust deed. Now, while it is true the plaintiff's bill alleges that on the 2d of October, 1889, S. H. Shaffer and wife conveyed this tract of three hundred twelve and one-half acres of land to the plaintiff, yet it is clear that Shaffer never acquired any title to said tract; that before he became interested in any manner in said land the title of said three hundred twelve and one-half acre tract had been conveyed by A. C. Harness to W. H. Randolph, trustee, and, as we have shown, was sold by his successor, C. W. Dailey, trustee, to Chipley and Shearer; and if plaintiff took possession, as is alleged, he did so in the absence of any title. As to the title of Shaffer to said three hundred twelve and one-half acre tract, from whom plaintiff claims to have derived his title by the deed of October 2, 1889, said Shaffer in his answer to plaintiff's bill claims that he derived title thereto by purchase from A. B. Parsons, trustee; but, as we have seen, Harness did not convey said tract to Parsons, trustee, until September 4, 1885, at which time the legal title was in W. M. Randolph, and he only could have acquired the equity of redemption in said tract, and that was extinguished by the sale under said first trust deed by C. W. Dailey, who was substituted for Randolph, so that it is clear that said S. H. Shaffer had no title to the land in controversy and passed none to the plaintiff by his deed of October 2, 1889. The plaintiff's bill was demurred to by S. H. Shaffer, C. W. Dailey, J. J. Chipley, Gottlieb Hutter and Benjamin Dailey. These parties, together with A. B. Parsons, answered the plaintiff's bill, putting in issue its allegations. Depositions were taken, and on the 17th of March, 1896, the case was heard and the bill dismissed, and the plaintiff appealed.

The only error assigned was that the court erred in dismissing the cause. Did the court commit an error in rendering this decree? The plaintiff in his bill appears to claim that Scaffer, the party under whom he claims, had no title, and alleges that the sale made by C. W. Dailey, trustee, to Shearer and Chipley of said three hundred and twelve and one-half acres was made without his consent

and by the concurrence and connivance of these defendants to defraud him. He, however, in no manner shows how he has been defrauded by them, or anything they have done that they had not a perfect right to do. While in his bill he alleges that the three hundred and twelve and one-half acre tract, as he is informed and believes, was not within the bounds and scope of said Shaffer's purchase of the Harness lands, and has never been owned by him,— which allegation, if true, would show that Shaffer by his deed conferred no title on him,—yet he in an indefinite way claims that he is entitled to have his rights defined, and to be extricated from the confusion and lack of identity of the lands purchased by him. In other words, he asks that the cloud occasioned by the trust sale and conveyance made by C. W. Dailey may be removed from his three hundred and twelve and one-half acre tract, and this, so far as I can discover, is relied on to entitle him to relief in a court of equity. It is true he desires to have the title derived from Shaffer by him settled and quieted, but on the face of his bill and exhibits he shows that he acquired no title from that source. He resists the title and pretention contended for by the defendants Harper, Shearer, Whiting, Vanmeter, Hutter, and Dailey, trustee, and calls for discovery thereto, and the establishment of any claim they have to said land, but his bill and exhibits show that he has no title himself and is entitled to no discovery. He also prays an injunction to restrain the recording of, or attempting by process of law to acquire, the right or title of any of them under any title by or through the said Dailey, trustee, but there is no affidavit to support the bill. Plaintiff also prays for a discovery as to the manner in which the Harper claim attached to and affected said three hundred and twelve and one-half acres all of which is fully shown in the proceedings had in chancery cause of *Anvil* v. *Harness, et al.*, the record of which case is made an exhibit with the plaintiff's bill; so that, in my opinion, the circuit court committed no error in dismissing the plaintiff's bill, if the demurrers alone were relied on; but when we look to the final decree the cause appears to have been heard upon its merits, upon full denial of the allegations of the bill in the answers, and upon the proofs taken in the cause. Look-

ing at the entire record, my opinion is that the court committed no error in dismissing the bill.   The decree complained of is therefore affirmed,

*Affirmed.*