# CHARLESTON.

## DOLAN *v.* DOLAN.

Submitted February 8, 1910. Decided December 5, 1911.

1. DEVISE OF LAND.
    *Quaere.* What does the word "surface" alone, without qualifying words, in a devise of land mean? Does it pass minerals in the land? (p. 79).

2.  WILLS—*Construction—Minerals.*
    The will in this case confers upon Michael P. Dolan the land
    devised to him, including minerals, except coal.   (p. 80).

(ROBINSON, JUDGE, dissenting.)

Error to Circuit Court, Harrison County.

Action by John J. Dolan and others against Michael Dolan
and others.   Judgment for plaintiffs, and defendants bring
error.

> *Reversed and Judgment Rendered.*

*Charles Powell, Kemble White* and *J. E. Law,* for plaintiffs in error.

*Davis & Davis* and *Osman E. Swartz,* for defendants in error.

BRANNON, JUDGE:

Partick Dolan died owner of a very considerable landed and
personal estate, leaving five children, John J. Dolan, Mary,
Catherine, Anna J. and Michael P. Dolan.   He left a will.
Its fourth clause reads as follows: "I will and devise to my son,
Michael P. Dolan, in fee the surface of my farm at Wolf
Summit containing three hundred and seventeen acres, also
six acres of the coal underlying said three hundred and seventeen acres to be located around the dwelling houses and buildings on said three hundred and seventeen acres, so as to preserve and protect the said buildings when the residue of the
coal underlying the said three hundred and seventeen acres is
at any time hereafter mined or removed."   In clause 7 is the
following language: "I further will and devise to my said
daughter Catherine all the coal underlying the said tract of
three hundred and seventeen acres of land hereinbefore devised to my son Michael P Dolan, with the exception of six
acres of coal hereinbefore reserved and devised to my said son
Michael P. as hereinbefore mentioned."

By other clauses he made bequests and devises.   To his wife
his furniture during life, with remainder to Anna J. and
Catherine Dolan, and $1,000 money; and to John J. Dolan
289 acres of land; to his daughter Mary one dollar; to Michael
P. Dolan all live stock and farming utensils; to Catherine
Dolan $2,000, to be paid by John J. Dolan; to Catherine Dolan

a note on Robert Hoggsett for $2,510.33 and horses; to Annie J. Dolan a like note on Hoggsett; to Anna J. Dolan a brick house in Clarksburg and a frame house in Wilsonburg; to a son of John J. Dolan a farm of 100 acres and a lot of live stock; to Catherine and Annie J. all money in bank after payment of $1,000 legacy to his wife.

Michael P. Dolan, claiming to own the oil and gas in the tract of 317 acres devised to him by the fourth clause of the will, leased the same to South Penn Oil Company for the production of oil and gas, and this company transferred to the Hope Natural Gas Company the gas right estate under the lease. Thus the right to develop oil under lease is vested in South Penn Oil Company, and right to develop gas is vested in the Hope Natural Gas Company. John J. Dolan, Mary Flanagan, Catherine Dolan Burns, and Annie J. Coleman, four of the children of Patrick Dolan, deceased, claiming right to oil and gas in the tract of 317 acres devised to Michael P. Dolan, (except a part which they quit-claimed to him) made a lease to John W. Davis for development of oil and gas in a tract of 180 acres, that part of the 317 not quit-claimed, and Davis transferred such lease to Washington Gas Company. Later John J. Dolan, Mary Flanagan, Catherine Dolan Burns, Annie J. Coleman and Washington Gas Company brought an action of ejectment against Michael P. Dolan, South Penn Oil Company and Hope Gas Company to recover the oil and gas in that 180 acres, and recovered verdict and judgment for the same, and those defendants come to this Court by writ of error.

Did Michael P. Dolan take the oil and gas under his father's will? If he did, the plaintiffs have no title to them. What does the word "surface" in a will mean? Or rather, what does it mean as used in this particular will? for that is our question.

Briefs of counsel upon this and other questions show great ability and research, but cite a legion of diverse authority, confusing and bewildering to the mind. It is said that there is no subject of law on which cases are less useful than wills, as no two are alike, and the particular intent of each, under its own provision, must be the guide. As to this word "surface" a brief says that the English and law dictionaries give it no definition useful in construction of legal writings. It will not

do to define it by geometry, "a magnitude that has length and breadth, without thickness; superficies, as a plane surface or a·spherical surface," nor to define it as does the Standard Dictionary, "The exterior part of anything that has length, breadth and thickness; the outside of a body." These definitions will not help in this case. They would not give the word surface in this will a depth of one inch in soil. Nor do the law authorities definitely define its legal meaning, as applicable to land· conveyance. Counsel for the plaintiff would limit the effect of the word to the·arable ·or agricultural surface, the depth of the plough-share. Does it go down to the center of the earth, taking all minerals under the maxim, *"Cujus est solum, ejus est usque ad coelum et ad inferos?"* I would say that a conveyance of surface of land, without more, means all *solum,* the land except minerals. Why not minerals? Because the word "land" is not used; if it were it would take in minerals. The word "surface" is used, more limited, and the courts ·have said it excepts minerals. The testator has used this particular word never used in ordinary conveyances, which almost invariably use the word land, which ·passes everything. Something is meant by the word "surface." McSwinney on Mines, § 33 says; "Surface, or superficies, *prima facie,* means, of course, nothing more than mere *vestimenta terra.* Surface may however, be used in a secondary sense to denote the whole of the soil down to the center of the earth, except ·the mines. *Pountney* v. *Clayton,* 11 Q. B. D., pages 833, 839, 840." When land is purchased, with an exception of the mines and minerals, the purchase includes, not merely the surface, but the whole of the · subsoil, which does not consist of mines and minerals. *Pountney* v. *Clayton supra.* "Surface means, not the mere plane surface, but all the land except mines." *Pountney* v. *Clayton,* S. R., Q. B. Div., p. 840.

Under this principle devise to Michael P. Dolan by the fourth clause of the will of the three hundred and seventeen acres would except the oil and gas and leave them in the testator's heirs. But we must look at other parts of the will. in connection with that devise, and especially that provision in clause 7 which says: "I further will and devise to my said daughter Catherine all the coal underlying the said tract of

three hundred and seventeen acres of land hereinbefore devised
to my son Michael P. Dolan." He took the coal from Michael
P. Dolan, but took no other minerals. The fact that he put
in this clause taking from Michael the coal except six acres
shows that he thought that the devise of the surface carried
with it all minerals, and therefore it was necessary to make
exception of the coal for Catherine. But in addition, in this
seventh clause the testator goes back in mind to clause four,
and declares that he had devised by it "the said tract of three
hundred and seventeen acres of land," not the surface. He
used the words "tract" and "land," words of the broadest
import to convey the land and minerals in it. It seems plain,
taking these two clauses together, that the testator intended to
give Michael the land and everything in it, minerals and all,
except the coal. He made one exception from the devise to
Michael, and only one, the coal. Clause 7 interprets clause
four. Intent is the controlling guide in a will. Taking these
two clauses together, can we think that the testator intended
to reserve to himself the oil and gas and leave it undisposed of
by his will to go to his heirs? Can we have any other idea than
that he intended to give Michael the land and everything in
it, except the coal, and to give that to his daughter?

Another consideration is of great importance upon con-
struction of clause four, that is, that it is a fixed rule of law
that when a man makes a will .the presumption, in the absence
of proofs to the contrary is, that he intends thereby to dispose
of his whole estate. *Irwin* v. *Zane,* 15 W. Va. 646. "In
construing wills, words and expressions of doubtful meaning
will not be construed, if it can be avoided, so as to create an
intestacy. The testator having made his will will be presumed
to have intended to dispose of his whole estate, unless the
contrary shall plainly appear." *Houser* v. *Ruffner,* 18 W. Va.
244. The Supreme Court of the United States said in *Given*
v. *Hilton,* 95 U. S. 591, that where there appears to be a
general intent on the testator's part to make by his will a
complete disposition of all his estate, that such general intent
is of weight "in determining what was intended by particular
devises or bequests that may admit of enlarged or limited
constructions." Under this rule so well established in law that
it is almost a pole star guiding construction of wills, when

we reflect on the numerous devises and bequests made by Dolan among his entire family, wife and children, and that it covered his whole estate personal and real, and left nothing undisposed of, can we say or think for a moment that he had in mind to retain oil and gas out of the tract given Michael P. Dolan and leave them undisposed of and die still owning them? Can we say that he had such intention when he did not know of their presence? It is plain that he intended to give his son that tract of land clear and clean reserving only coal.

Another forcible argument in favor of this holding lies in the fact that Patrick Dolan by his will, though disposing of his whole estate, cut off his daughter Mary with only one dollar. There is inconsistency between the position that he intended to except all minerals in the tract willed to Michael, and the fact that the father intended to cut off Mary from sharing in his estate; the two intents are in conflict; for he must have known that if he died still owning such minerals, she would share in them by the law of descents, whereas his fixed intent was to deny her a share. This is shown by the will itself in its one dollar legacy to her. But this is enforced by some evidence offered by the defendants, but excluded. This evidence was to be given by the attorneys who prepared the will, John J. and John W. Davis, to the effect that Patrick Dolan specifically directed that the will give Mary only a dollar; and that later before the completion of the will, John J. Davis asked Dolan if he thought he was doing justice to his daughter Mary, when he replied with emphasis that she must be disinherited because she had declared that she was going to marry a certain man against her father's will, showing determined purpose to exclude this daughter. The question is what the import of the word "surface"; did the testator intend to reserve minerals? This evidence was meant to show that he did not design to retain minerals because that would defeat his purpose to disinherit Mary Dolan. Why say she should have only a dollar, and yet retain it may be valuable oil and gas rights in which she would share by descent? I do not think this evidence necessary, because I think the will itself gives the word "surface" meaning plain, and that there is no ambiguity; but if there is ambiguity, evidence to enable a court to put itself in Dolan's place, to show the estate, the family, the motives toward them,

circumstances under which he made his will, is admissible. *Wilson* v. *Perry,* 29 W. Va. 169; *Knowlton* v. *Campbell,* 48 *Id.* 294; 13 Va. & W. Va. Ency. Dig. 789.

But it is said that our holding is contrary to *Williams* v. *South Penn Oil Co.,* 52 W. Va. 181, in its syllabus, which reads: "The word 'surface' when specifically used as a subject of conveyance has a definite and certain meaning, and means only that portion of the land which is or may be used for agricultural purposes." The plaintiffs rely on that as compelling us to sustain them, while the defense said that the case was wrongly decided and should be overruled. We concur with neither contention. That case was properly decided. Wilson conveyed Monroe the surface. Under the principle above stated, that a conveyance of surface, without more, excepts minerals, Wilson's conveyance reserved oil and gas. His deed contained no clause qualifying or giving secondary meaning to the word, whereas, in this will there is the language above quoted from clause 7 excepting only coal, and declaring that the testator had devised to Michael "the said tract." Moreover, that was a deed, whereas we have a will to deal with. Wilson was making a deed, and was not disposing of all his estate, as in the case of a will, and there was no presumption against intestacy as in the case of a will. In our case, as shown in the detail of devises and bequests, Wilson was not giving to his entire family his entire estate.

The above quoted point in the *Williams Case* is inaccurate in expression; but as Wilson conveyed "surface", without anything to divert the word from its primary meaning, the point was meant only to say that such a conveyance, using only the word "surface", would except oil and gas.

As the legal construction of the will gives Michael P. Dolan the oil and gas, the verdict is contrary to both law and evidence; and it was error to give a binding instruction to the jury to find for the plaintiffs, and error to refuse a binding instruction to find for the defendants.

Therefore, we reverse the judgment, set aside the verdict, and enter judgment in this Court for the defendants, the case turning solely on the construction of the will.

*Reversed and Judgment Rendered.*