# CHARLESTON.

## McMillan *et al.* v. Connor *et al.*

### Submitted March 5, 1918.  Decided March 26, 1918.

1. Tenancy in Common—*Contract—Fraud—Ratification—Cancella-. tion.*

    Where one, who is the sole owner of the surface of a small tract of land and joint owner with another in the oil and gas therein, and obligated to keep it leased for oil and gas so long as the surrounding lands are leased for such purposes, leases such tract, providing for payment of delay rentals of $3.50 per quarter until a well is drilled and for payment of $200 royalty for each producing gas well, one-half of which royalty is to be paid to his cotenant, and, just prior to the expiration of the lease and after the discovery of gas in paying quantities in the immediate vicinity and the location of a well, by the same lessee, on other and adjacent lands of the lessor within such close proximity to said small tract as to drain the gas therefrom, extends the lease for five years longer in consideration of $75 cash and the further payment to him by the lessee of a like sum for each three months thereafter, until a well is drilled, in consequence whereof the well so located on his other land is completed and drains the gas from said small tract, such extension agreement is a fraud upon the rights of his cotenant and entitles him either to ratify such agreement and recover one-half the consideration paid to the lessor in lieu of drilling, or to have the contract canceled. (p. 178).

2. Equity—*Bill—Demurrer.*

    A bill is not demurrable because it is framed in a double aspect, provided the facts alleged and the alternative relief asked are consistent. (p. 180).

3. Same—*Parties—Joinder—Interest.*

    It is not necessary that one should be interested in both aspects of such case to entitle him to be made a party; if he is interested in either aspect he is properly joined in the suit. (p. 180).

4. Same—*Jurisdiction—Full Relief.*

    Where plaintiff sues several defendants in equity for a cause arising out of a single transaction, equitable as to some of them and purely legal as to others, the court will generally retain jurisdiction and administer complete relief. (p. 181).

Certified Questions from Circuit Court, Ritchie County.

Bill by Charles A. McMillan and others against Charles

O. Connor and others.    Demurrers to bill overruled, and questions certified by the circuit court.

*Decree affirmed, and cause remanded.*

*Adams & Cooper,* for plaintiffs.

*Robert S. Blair, A. B. Fleming,* and *Kemble White,* for defendants.

WILLIAMS, JUDGE:

In the exercise of its discretion, under section 1, chapter 135, Barnes' Code, the circuit court of Ritchie county has certified for our decision certain questions arising on demurrers which it overruled to plaintiffs' bill.    The bill is filed by Charles A. McMillan, Ella McMillan, O. G. Bush and Warder Bush, plaintiffs, against the administrator, the widow and heirs at law of Joseph A. Connor, deceased, and the Hope Natural Gas Company, defendants.

The bill alleges that plaintiffs were joint owners of 100 acres of land and by deed dated May 26, 1900, and recorded July 2, 1900, conveyed to Joseph A. Connor 14 acres thereof, by metes and bounds, and excepted and reserved "a full one-sixteenth part of all the oil and gas in and under the tract of land therein conveyed, to be delivered to the grantors' credit in the pipe line, free of cost to them."    The grantee covenanted to lease the land to some oil company for the production of oil and gas and to keep the same leased while any or all of the surrounding premises were leased, and the grantors agreed that he might receive the delay rentals.    By three other deeds of the same date plaintiffs conveyed the residue of said 100 acre tract as follows: 26 acres to Elijah Smith, 30 acres to A. F. Robison, and 30 acres to Alvin Smith; and in each of said conveyances made an exception and reservation of a one-sixteenth interest in the oil and gas similar to that above mentioned.    It is averred that the tract conveyed to Elijah Smith is now owned by said A. F. Robison, and the tract conveyed to said Robison, by the heirs of Morgan Connor, deceased; and that the tract conveyed to Alvin Smith is still owned by him.

The said Joseph A. Connor and Alice G. his wife leased said 14 acres, for oil and gas development, to the Mountain State Gas Company on the 14th of August, 1908, for a term of five years, and as long thereafter as oil or gas is produced therefrom, the consideration being one-eighth of all the oil produced, and $200 per year for each gas well from which the gas should be marketed and used off the premises. The lessee covenanted to drill a well within thirty days or pay a delay rental of $3.50 quarterly in advance for each three months thereafter until a well should be completed thereon. The lease provides in terms that payment of one-half of all oil and gas well royalties or rentals shall be made to plaintiffs, and was recorded on the 21st of April, 1911. On the 20th of June, 1913, it was assigned to the Hope Natural Gas Company, and on the same date it agreed in writing under seal with the said Joseph A. Connor and his wife Alice G. for an extension of the lease for five years from the 14th of August, 1913, for a consideration of $75.00 cash and $75.00 payable each quarter thereafter in lieu of drilling, until such time as the Hope Natural Gas Company should surrender or abandon the lease.

This extension agreement expressly provides that the quarterly payments of $75.00 "are not in addition to but are to be substituted for the rentals for delay in operations reserved to the lessors in said lease; and it is agreed that if a gas well is completed on said land during any period from which such payment has been made in advance, then no further rental or royalty shall accrue upon such well until after the expiration of such period." It contained this stipulation also: "This agreement is intended to embrace the entire interest in all of the gas and oil underlying said land, and the parties of the first part covenant to refund to the party of the second part a proportionate part of any payments received by them (and to accept subsequent payments proportionately reduced), for any share of said gas or oil which may be owned by persons not parties hereto."

Joseph A. Connor died intestate early in 1915, leaving a widow and ten children. His son Charles O. Connor quali-

fied as administrator, and Alice G. Connor, his widow, was appointed guardian for the five infant children.

The bill avers that, at the time the lease was thus extended a number of wells had been drilled to completion in the neighborhood of the 14 acre tract, which produced gas in paying quantities, and the 14 acres was then considered valuable gas territory; that Joseph A. Connor was then the owner of another tract of land, adjoining the aforesaid 14 acre tract, which had also been leased to the Hope Natural Gas Company for oil and gas purposes, and shortly before the extension agreement was made it had located a well thereon, within about four hundred feet of the boundary line of the 14 acres, and within a few weeks or months, at most, thereafter, drilled a well which produced and is still producing gas in paying quantities, the royalties from which were paid to the said Joseph A. Connor until his death; that, about the same time, the Hope Natural Gas Company drilled another well on the opposite side of said 14 acres, and within four hundred or five hundred feet of the line, on that part of the 100 acre tract which plaintiffs had conveyed to A. F. Robison, which was likewise a continuous, producing gas well; that said company also drilled other wells, which are producing gas in paying quantities, in the immediate vicinity of said 14 acre tract; that it has taken no steps toward drilling upon said 14 acre tract, but continued to pay said Joseph A. Connor the quarterly sums of $75.00, accruing under the extension agreement, until his death, and thereafter to pay said sums to his heirs; and that no part of the same has been paid to the plaintiffs.

Plaintiffs aver that the aforesaid extension agreement was not made in good faith, but that the cash payment of $75.00 and the subsequent quarterly payments of a like amount were made and were accepted, in lieu of drilling a well upon the 14 acre tract, and amounted to the usual and customary consideration paid to the land owners for a producing gas well, and was made for the purpose of relieving the Hope Natural Gas Company from any obligation to drill a well on the 14 acre tract, off-setting the well drilled on the other land of said Joseph A. Connor, and within four hundred feet of the boundary line of said 14 acres, in the event the same should

prove to be a producing gas well, and likewise of its obligation to drill wells off-setting other wells drilled on other adjoining lands; that the usual and customary rental paid for delay in drilling, under leases for oil and gas in the vicinity of the 14 acre tract, has been for many years and still is $1.00 per acre, as provided for in the original lease on the 14 acres, and the usual gas well royalty is $300 per year for a gas producing well; that the gas in that vicinity is found in what is known as the "Maxon" sand, which is open and porous in character, in consequence whereof the gas underlying the 14 acres "is being taken by the defendant Hope Natural Gas Company through its said wells on adjoining and nearby tracts of land, and especially through the well on the other real estate owned by the defendants Connors, and said tract of fourteen (14) acres is being denuded of all gas within and under the same, without any compensation to the plaintiffs therefor, in fraud of their rights." Plaintiffs further aver, on information and belief, that the sums paid to Joseph A. Connor in his life time, under the aforesaid agreement, amounted to $525, and the sums paid to his widow and heirs since his death aggregate $675; that, shortly before instituting this suit, plaintiffs demanded of the administrator, the widow and heirs of said Joseph A. Connor, deceased, the one-half of the aforesaid sums, but they refused and still refuse to pay them any part of the same; that long prior to this suit they also notified the Hope Natural Gas Company of their interest and claims in the premises, but it has wholly disregarded their said claims; that, at the time it entered into the extension agreement with said Joseph A. Connor the Hope Natural Gas Company owned and still owns oil and gas leases on all the lands contiguous to and surrounding the aforesaid 14 acres, and if plaintiffs should be denied participation in the aforesaid quarterly payments then the said agreement "operates and will continue to operate as a gross fraud on the rights and interests of the plaintiffs, participated in by each and all the parties thereto, especially that it, in effect, purports to relieve the Hope Natural Gas Company from all obligations to develop said 14 acres and to protect the same against drainage through wells on adjoining lands;" and

that, because of the proximity to it of producing wells and the small size of the tract, the gas will be drained therefrom through producing wells on adjacent lands, and the interest of plaintiffs in the gas underlying said 14 acres rendered wholly worthless.

Plaintiffs also aver, on information and belief, that the personal estate of Joseph A. Connor, deceased, has been applied to the payment of other debts owing by his estate and there is now no personal assets in the hands of his administrator to be applied to plaintiffs' claim; and that resort to the real estate which descended to his heirs is necessary. They bring the suit on behalf of themselves and all other creditors of said Joseph A. Connor, deceased.

Plaintiffs pray that one-half of the sums paid to Joseph A. Connor in his lifetime, under the aforesaid extension agreement, be decreed to them as a debt against his estate, that the cause be referred to a commissioner to convene the creditors and ascertain the amount of the debts, and that they be granted a decree against his widow and heirs for one-half the amount paid to them since the death of said Joseph A. Connor; and in the event the court should hold they are not entitled to that special relief, they ask that the aforesaid extension agreement be cancelled and annuled, as a fraud upon their rights, and for general relief.

The truth of the foregoing averments are admitted for the purposes of the demurrers. Plaintiffs and Joseph A. Connor were joint owners of the oil and gas in the 14 acre tract. Connor covenanted to keep it leased for oil and gas purposes as long as the surrounding lands were leased. He did lease it in 1908, but when the lease was about to expire he agreed with the Hope Natural Gas Company, the assignee of the original lessee, to extend it for another period of five years, in consideration for which said company promised to pay him $75.00 cash, and $75.00 for each quarter, until a well should be drilled. The tract was then known to contain gas. The gas in that territory is found in a very porous sand, and is easily drained. At that time the lessee held leases on all the surrounding land, and had located two wells, one on each side of the 14 acres and in close proximity to the boundary lines.

How far apart these wells are is not alleged, but one of them is alleged to be within four hundred feet of the line, and the other not more than five hundred feet, and it is alleged they are draining the gas from under the said 14 acres. The well nearest to it is on other land then owned by Joseph A. Connor, deceased, and now owned by his heirs. The quarterly payments for delay in drilling, provided for in the original lease, was $3.50, or $1.00 per acre per year, which was the usual and customary amount paid for delay in drilling. In order to avoid the expense of drilling a well on the 14 acres, the lessee paid said Connor $75.00 cash and agreed to pay him $75.00 per quarter thereafter, or $300.00 per year. That was one and one-half times as much as it was required by the terms of the lease to pay for a producing gas well. By this agreement said Connor realized as much as he would have been entitled to receive as royalty from three producing gas wells on the 14 acre tract. That Connor was entitled to receive all the delay rentals on any *bona fide* lease, is not controverted; but the theory of plaintiffs' bill is, that the consideration paid for the extension of the lease is not simply for delay in drilling, but was intened to compensate him for the gas that was being drained from under the land through producing wells on other lands, and, at the same time, relieve the lessee from its implied covenant to protect the land from drainage. Connor's agreement to lease the 14 acres for oil and gas, and to keep it leased, contemplated development, in the event it should be discovered to contain those minerals, but as soon as it was demonstrated with reasonable certainty that it did contain gas in paying quantities, he made the aforesaid agreement in violation of the spirit and purpose of his covenant with plaintiffs, his cotenants in the oil and gas. If the averments of the bill be true and the agreement is allowed to stand, the Hope Natural Gas Company will get all the gas in the land by drainage through its wells on adjoining tracts and said Connor and his heirs all the royalties therefrom, under the designation of delay rentals. As long as said Connor was getting as much, in the way of delay rentals, as he would have been entitled to receive under the lease for three producing wells, he would very likely be content to

suffer the drainage to continue, for the drilling of one or even two producing wells would operate to diminish his income from the 14 acres; and as long as the lessee could get the gas from it through other wells already drilled there was certainly no incentive for it to drill a well on the land. The extension agreement is clearly in fraud of plaintiffs' rights.

Notwithstanding the agreement is fraudulent as to plaintiffs they may nevertheless ratify it, and sue to recover their share of the money paid in lieu of royalties on producing wells. *Cecil v. Clark*, 49 W. Va. 459, and *Summers v. Bennett*, 68 W. Va. 157. If the allegations of the bill are true, the same result is accomplished by the agreement, so far as it affects plaintiffs' rights, as would have been accomplished by the drilling of wells on the land and payment of all the royalties derived therefrom to said Connor and his heirs, instead of paying one-half thereof to plaintiffs as provided in the original lease. By their prayer for a recovery of one-half the money paid to Connor and his heirs, plaintiffs have elected to treat the agreement as valid. The alternative prayer does not make the bill demurrable. Plaintiffs had a right to frame their bill in a double aspect so as to secure such equitable relief as the court might determine they were entitled to. *Zell-Guano Co. v. Heatherly*, 38 W. Va. 409. "A bill framed with a double aspect, but upon consistent states of facts, praying relief in the alternative, is not for that reason open to objection." *United States Blowpipe Co. v. Spencer*, 40 W. Va. 698. The alternative prayer for cancellation is not inconsistent with the relief asked by way of compensation. In one event plaintiffs would receive their share of the money paid for draining the gas from the land, and in the other they would be put in a position where they could require the lessee either to surrender the lease or protect the land by drilling off-set wells. Either prayer, if granted, would operate as a protection to their interest in the gas.

Counsel for the Hope Natural Gas Company insist that, as there was no prayer for relief against it, it was an unnecessary party to the suit and the demurrer as to it should have been sustained. In one aspect of the case it was a necessary party. The agreement could not properly be canceled unless

it was a party. It was vitally concerned in that matter and was, therefore, properly joined as a defendant. The lease contract, in which all parties to the suit were interested in one way or another, was the subject matter of the suit. It was not essential that the lessee should be interested in both aspects of the case in order to make it a proper party. It was sufficient if it was interested in any respect. 1 Hogg's Eq. Proc., Sec. 86, and *Gist* v. *Virginian Ry. Co.*, 79 W. Va. 167, 90 S. E. 554. As no pecuniary relief is asked against the lessee, it is unnecessary to decide, and we do not say, whether it would be liable, in any event, to plaintiffs for one-half the money paid to Joseph A. Connor and his heirs, under the extension agreement and, for that reason also, was a proper party. The provision inserted in the agreement obligating said Connor to refund to the lessee such proportionate part of the payments as other parties interested in the oil and gas, and not parties to said agreement, might be entitled to, would seem to imply that it then recognized the right of these plaintiffs to demand a share in such payments, for it knew of their interest in the oil and gas, and was bound to account to them for their share of the royalty.

Finally, it is urged that the bill is multifarious. Joseph A. Connor died after the aforesaid extension agreement was made and after $525 of the royalties therein provided had been paid to him, and it is not questioned that the bill presents a proper case against his estate. The bill alleges there is no personal estate in the hands of his administrator with which to pay plaintiffs' claim, thus showing the necessity of going into equity to subject the real estate to its payment. It was necessary to make his widow and heirs parties for that purpose, and all parties being properly before the court, it would not dismiss from the suit a part of plaintiffs' demand and administer justice by piecemeal but would grant complete relief.

The decree will be affirmed and the cause remanded.

*Decree affirmed, and cause remanded.*