VIRGIL C. TATE

*v.*

UNITED FUEL GAS COMPANY, *et al.*

(CC 790)

Submitted April 22, 1952. Decided June 10, 1952.

Fox, Judge, not participating.

*D. W. Taylor, John T. Copenhaver, Jr.,* for plaintiff.

*Bernard J. Pettigrew, Thomas E. Pettigrew,* for defendants.

Lovins, Judge:

In this suit in equity, instituted in the Court of Common Pleas of Kanawha County, Virgil C. Tate, plaintiff, seeks to enjoin the United Fuel Gas Company, a corporation, one of the defendants, from using plaintiff's land and the strata and formations thereon, for the purpose of storing gas; a decree for damages; cancellation of a gas storage agreement under which gas storage operations have been conducted, as a cloud on plaintiff's title; and a decree against the United Fuel Gas Company for the value of previous use of the tract for unauthorized purposes.

William T. Lively, Siegel Workman, L. S. Echols, Jr., and Minerva E. O'Dell, with their spouses, were parties to the above mentioned agreement, and are joined in this suit as defendants.

The Court of Common Pleas overruled demurrers of defendants to the bill of complaint, and certified questions raised by the bill and demurrers to the Circuit Court of Kanawha County. The Circuit Court reversed the decree of the Court of Common Pleas, sustained the demurrers to the bill of complaint, and certified the same questions to this court.

Defendant Siegel Workman was the owner in fee simple of a tract of land containing 244 acres, situated on Pocatalico River in Union District of Kanawha County, West Virginia. By deed dated April 15, 1937, he conveyed that parcel to Karney E. Tinney. The deed contained the following exception. *"The oil, gas and brine and all minerals, except coal, underlying the surface of the land hereby conveyed are expressly excepted and reserved* from the operation of this deed, together with the exclusive right to drill and mine thereon for the production and removal

of the oil and gas and other minerals hereby excepted and reserved and rights of way over and across said premises to the place or places of drilling and mining and the right to use necessary water from and lay pipe lines across said premises or construct drips, build tanks and stations and houses for gates, meters, regulators and all other appliances necessary for such purpose; but such operations shall be carried on in such manner as not to unreasonably destroy or injure the soil or surface of said land or the improvements thereon or remove the subjacent support from said land, or unreasonably or unnecessarily interfere with the use thereof for agricultural purposes or the removal of coal therefrom, *it being understood that the term 'mineral' as used herein does not include clay, sand, stone or surface minerals except such as may be necessary for the operation for the oil and gas and other minerals reserved and excepted herein.*" [Emphasis supplied]

On July 25, 1945, Karney E. Tinney conveyed the land to plaintiff. The conveyance was made expressly subject to the same exception set forth above.

Siegel Workman, by deed dated April 29, 1939, conveyed to L. S. Echols, W. H. O'Dell and William T. Lively, an undivided one-fourth interest each in the oil and gas and other minerals, "except coal, clay, sandstone or surface minerals" underlying the 244 acre tract. W. H. O'Dell later conveyed his one-fourth interest to his wife, Minerva E. O'Dell. In 1946, L. S. Echols died, testate, devising his interest in the tract to L. S. Echols, Jr.

On April 1, 1950, Minerva E. O'Dell, William T. Lively, Siegel Workman and L. S. Echols, Jr., with their spouses, "in so far as * * * [they had] the legal authority so to grant", leased the tract to the United Fuel Gas Company, "for the purpose of searching for, exploring, drilling and operating for and marketing oil and gas, and of laying pipe lines, and building tanks, stations, * * * with all other rights * * * incident or convenient for the operation of this land alone and conjointly with neighboring lands." The lease recited that the present agreement superseded

an oil and gas lease to another lessee, executed in August, 1942. Plaintiff avers that under the prior lease a well which produced gas was drilled and completed to the Big Lime formation but that it had ceased to produce gas in paying quantities.

A gas storage agreement was also executed by the same parties on April 1, 1950, giving the lessee the exclusive right to use and occupy the Big Lime stratum underlying the tract for the purpose of "injecting and storing gas therein and removing gas therefrom, together with all rights reasonably necessary or convenient for such purposes." The lessee was granted the further right "to enter upon said premises and inject gas into the Big Lime stratum, store the same therein and remove same therefrom, and, in so far as Lessor has the right so to grant, the privilege of laying pipe lines over and drilling storage wells on said premises, converting any existing well to a gas storage well, together with all other rights and privileges necessary in the operation of said property for storage purposes, alone or in conjunction with neighboring lands."

Subsequent to the execution of the foregoing lease and agreement, the United Fuel Gas Company drilled and completed a well to the Big Lime stratum for the purpose of storing gas therein. No oil or gas has been produced from that well. Gas, which has been produced elsewhere, has been delivered by pipe line to the Big Lime formation for storage.

Plaintiff asserts that he is the rightful owner of all the clay, sand and stone within and underlying the tract here involved, and that in its drilling and storage operation, the United Fuel Gas Company has damaged the surface and improvements on the tract to the extent of $2500.00, by the construction and use of roads, the laying of pipe, and the destruction of plaintiff's crops and fences.

Two separate demurrers were filed to the bill of complaint—one by the United Fuel Gas Company and the other by the remaining defendants. In both demurrers,

identical in allegations, defendants say that plaintiff has an adequate remedy at law, and that plaintiff has no such interest in the minerals as would enable him to maintain this suit. Answers have also been filed alleging that there is recoverable gas in the Big Lime stratum, but, since the issues here presented arise upon the demurrers to the bill of complaint, the contents of the answers are not considered.

In overruling the demurrers to the bill of complaint the Court of Common Pleas certified the following questions to the Circuit Court:

"(1) Does the plaintiff have a full, adequate and complete remedy at law?

"(2) Does plaintiff's bill present a cause meriting and calling for equitable relief?

"(3) Are the clay, sand and stone within and underlying the surface of the tract of land in question herein, owned by the plaintiff or by the defendants or some of them?

"(4) Does the * * * [exception hereinabove quoted] contained in the deed from Siegel Workman to Karney E. Tinney, plaintiff's predecessor in title, create title to the Big Lime stratum in plaintiff or defendant?"

In reversing the ruling of the Court of Common Pleas and sustaining the demurrers, the Circuit Court certified questions to this court, which are identical with those certified by the Court of Common Pleas.

A disposition of the questions certified rests almost entirely upon the proposition that the plaintiff is the owner of the Big Lime stratum. If he is not the owner of that portion of the tract of land, there are no grounds for equitable relief.

If the plaintiff only asserted in his bill of complaint a money demand for damages to the surface of his land and compensation for the unauthorized use thereof, this suit should not be considered and determined in an

equitable forum, since the plaintiff would have an adequate and complete remedy at law. But he alleges facts which, if established by proof, would entitle him to a decree removing a cloud on his title to the subterranean formation known as the Big Lime stratum. He also alleges certain acts and conduct by the corporate defendant, which amount to a continuing trespass, and prays that such acts and conduct be enjoined.

It is a well known principle of equity jurisprudence that a court of equity has jurisdiction to remove a cloud on title. *Evans* v. *Hale,* 131 W. Va. 808, 50 S. E. 2d 682; *Corporation* v. *Mining Co.,* 131 W. Va. 793, 50 S. E. 2d 673; *Putnam Company* v. *Fisher,* 128 W. Va. 383, 36 S. E. 2d 681; *Gilbert* v. *McCreary,* 87 W. Va. 56, 104 S. E. 273; *Waldron* v. *Harvey,* 54 W. Va. 608, 46 S. E. 603. See Hogg's Equity Procedure, Miller, 3rd Ed., §125. But before a court of equity will entertain a suit to remove a cloud on title, the plaintiff must be the owner of "a clear, legal and equitable title to the land". *Hitchcox* v. *Morrison,* 47 W. Va. 206, 34 S. E. 993. To the same effect: *Harr* v. *Shaffer et al.,* 45 W. Va. 709, 31 S. E. 905; *Logan* v. *Ward,* 58 W. Va. 366, 52 S. E. 398; *Wallace* v. *Elm Grove Coal Co.,* 58 W. Va. 449, 52 S. E. 485; *Harman* v. *Lambert,* 76 W. Va. 370, 85 S. E. 660; *Dudley* v. *Browning,* 79 W. Va. 331, 90 S. E. 878; *Hawkinberry* v. *Metz & Metz,* 91 W. Va. 637, 114 S. E. 240; *United Fuel Gas Company* v. *Hays Oil & Gas Company et als.,* 107 W. Va. 255, 148 S. E. 76.

It was formerly the rule that a plaintiff in a suit brought to remove a cloud on title must own the title and be in possession. But possession is no longer necessary in this jurisdiction. A circuit court has jurisdiction "in equity to remove any cloud on the title to real property or any part thereof, or any estate, right or interest therein, and to determine questions of title with respect thereto, without requiring allegations or proof of actual possession of the same; * * *." Code 51-2-2. *Cf. Bennett* v. *Neff,* 130 W. Va. 121, 42 S. E. 2d 793, 800; *Putnam Company* v. *Fisher, supra.*

A court of equity has jurisdiction to enjoin a continuing

trespass. *Putnam Company* v. *Fisher, supra; Hansford* v. *Rust,* 107 W. Va. 624, 150 S. E. 223; *Gas Co.* v. *Townsend,* 104 W. Va. 279, 139 S. E. 856. There is no jurisdiction in a law court to remove cloud on title or to enjoin a continuing trespass. Of course, a plaintiff can recover title to land in an action of ejectment. It is possible that the plaintiff in the instant case could recover a money judgment in a law action, but that would not afford him complete relief.

A court of equity, having properly taken jurisdiction of a suit for one or more purposes, may make full disposition of all questions involved, so as to afford complete relief and avoid a multiplicity of suits. *Hanly* v. *Watterson,* 39 W. Va. 214, 19 S. E. 536; *Chrislip et al.* v. *Teter et al.,* 43 W. Va. 356, 27 S. E. 288; *Robinson* v. *Braiden et al.,* 44 W. Va. 183, 28 S. E. 798; *Watson* v. *Watson,* 45 W. Va. 290, 31 S. E. 939; *Lay* v. *Phillips,* 116 W. Va. 60, 178 S. E. 523; *Bell* v. *Gas Co.,* 116 W. Va. 280, 181 S. E. 609; *Webber* v. *Offhaus,* 135 W. Va. 138, 62 S. E. 2d 690. This is true although some of the demands of the plaintiff are purely legal. *Cecil et al.* v. *Clark et al.,* 44 W. Va. 659, 30 S. E. 216; *McMillian* v. *Conner,* 82 W. Va. 173, 95 S. E. 642; *Downes* v. *Lumber Co.,* 99 W. Va. 267, 128 S. E. 385; *Charlton* v. *Motor Co.,* 115 W. Va. 25, 174 S. E. 570. Such principle is generally accepted. See I Pomeroy's Equity Jurisprudence, 5th Ed., Symons, §181.

Sustained by logic and the foregoing authorities, we reach the conclusion that the plaintiff in the case at bar does not have a full, adequate and complete remedy at law, and being the owner of the Big Lime stratum, as we shall hereinafter endeavor to show, he presents a cause calling for equitable relief, if sustained by proof.

The third and fourth questions may be discussed together since they both involve the controlling question: Do the deeds from Workman to Tinney and from Tinney to plaintiff pass title to the Big Lime stratum to the plaintiff, Tinney's successor in title, not withstanding the exception, or is that title vested in the individual defendants who have granted to the corporate defendant the right to store

gas? The answer to this question turns on an analysis of the exception contained in the deed from Workman to Tinney. The language of such exception would indicate that the grantor intended to treat it as a reservation as well as an exception. Notwithstanding that the grantor designated it a reservation, it is in law an exception. See *Bradley* v. *Virginia Ry. & Power Co.* (Va.), 87 S. E. 721. There is a difference between a reservation and an exception contained in a deed of conveyance. An exception is defined as "By * * * [an exception], the grantor withdraws from the operation of the conveyance that which is in existence, and included under the terms of the grant." A reservation is " 'something arising out of the thing granted, not then *in esse*, or some new thing created or reserved, issuing or coming out of the thing granted, and not a part of the thing itself, nor of anything issuing out of another thing' ". I Devlin on Real Estate, 3rd Ed., §221. See II Devlin on Real Estate, 3rd Ed., §980, for the construction frequently applied to reservations and exceptions. Notwithstanding that a reservation is called an exception or vice versa, courts will properly classify it according to the language used.

An analysis of the exception in the deed from Workman to Tinney does not disclose any ambiguity, patent or latent. Therefore, the rules relative to the construction of ambiguous writings have no application, and the writing will be applied according to its commonly accepted meaning. *Weekley* v. *Weekley,* 126 W. Va. 90, 27 S. E. 2d 591, 150 A.L.R. 689. It is not the duty of this court to construe but to enforce such exception according to the plain language embraced therein. Hence, we do not advert to the numerous citations by the plaintiff and defendant with reference to the construction of deeds of conveyance.

The language in the deed from Workman to Tinney in the absence of a limitation of the word "mineral", makes it clear that the oil, gas, brine and all other minerals except coal were not granted to Tinney and hence are not owned by the plaintiff, Tate. But language in the latter part of the exception limits the meaning of the

word "mineral" so as not to include clay, sand, stone or surface minerals. The limitation is also qualified in that clay, sand, stone or surface minerals necessary for the mining and drilling operation were excepted by Workman. Summarizing the exception: Oil, gas and brine were excepted by Workman. Minerals were excepted by him as well as sufficient clay, sand, stone and surface minerals necessary for mining and drilling operations, but Workman did not except other clay, sand, stone or surface minerals. An unqualified exception of the right to all minerals, in and under the land would include solid minerals as well as the oil and natural gas. *Sult* v. *A. Hochstetter Oil Co.*, 63 W. Va. 317, 61 S. E. 307. See *Oil Company* v. *Simmons*, 75 W. Va. 337, 83 S. E. 995; *Waugh* v. *Land & Coal Co.*, 103 W. Va. 567, 137 S. E. 895; *Jeffrey* v. *Land Co.*, 112 W. Va. 360, 164 S. E. 292. But the exception in the case at bar is limited.

Considering the entire deed with special attention to the language of the exception and giving such language its plain meaning, we are of the opinion that Workman did not retain title to the Big Lime stratum.

Defendants, in effect, contend that, assuming certain space has been vacated by the production of the gas in the Big Lime stratum, the individual defendants now own such space and have the right to the exclusive use thereof. The case of *Robinson* v. *Iron Co.*, 99 W. Va. 435, 129 S. E. 311, among others, is cited in support of that contention. An examination of the *Robinson* case shows that the Wheeling Steel and Iron Co. was treated as being the owner (evidently without any qualification), of "all the coal, limestone rock, ores and minerals between the center of the earth and the stratum of cement rock nine feet, more or less, in thickness located about thirty feet above the Wheeling vein of coal underlying the surface" of the land in question and that the plaintiff was vested with the remaining estate. This court held that the defendant could use the passageways formed in the operation of the mine in transporting minerals from adjoining lands. See *Armstrong* v. *Coal Co.*, 67 W. Va. 589, 607, 69 S. E. 195,

where the question is discussed as incident to the enforcement of a contract for sale of land. We are also cited to the cases of *Moore* v. *Coal Co.* (Ohio), 80 N. E. 6; *Attebery* v. *Blair* (Ill.), 91 N. E. 475; *Lillibridge* v. *Lackawanna Coal Co.* (Pa.), 22 A. 1035. We do not think that the *Robinson, Armstrong, Moore, Attebery* and *Lillibridge* cases present an analogy to the question here presented. The case of *Attebery* v. *Blair, supra,* seems to indicate, without any qualification, that the owner of the minerals could use the space from which minerals had been removed in any way he saw fit. The case of *Lillibridge* v. *Lackawanna Coal Co., supra,* has been substantially limited by subsequent decisions to the effect that so long as there remain recoverable minerals which are mined in good faith, the space may be used by the owner of the minerals. See *Webber* v. *Vogel* (Pa.), 42 A. 4; *Westerman* v. *Pennsylvania Salt Mfg. Co.* (Pa.), 103 A. 539; *Everly* v. *Shannopin Coal Co.* (Pa.), 11 A. 2d 700.

An entirely different factual situation is presented by the bill of complaint in this case. Though the answer, which is not considered, alleges that there are recoverable minerals in the Big Lime stratum, the allegations of the bill of complaint, being treated as true, are to the effect that there are no recoverable minerals in the Big Lime stratum. Under the rule of the cases cited, we do not think that the individual defendants or the corporate defendant have a right to use the space in the Big Lime stratum, if any such space exists.

We are aware of the expressions of this court, as well as the courts of other jurisdiction, to the effect that "the term mineral means primarily all substances other than the agricultural surface of the ground which may be got for manufacturing or mercantile purposes, whether from mines, as the word would seem to signify, or such as stone or clay, which are got by open workings". *Land Co.* v. *Brick & Tile Co.*, 83 W. Va. 20, 22, 97 S. E. 684.

For the purpose of contrasting the terms "minerals" and "surface", we advert to the holdings of this court in the

cases of *Williams* v. *South Penn Oil Co.*, 52 W. Va. 181, 43 S. E. 214, and *Drummond* v. *Fuel Co.*, 104 W. Va. 368, 140 S. E. 57. In the *Drummond* case the first point of the syllabus reads as follows: "The word 'surface' when used without any qualifying phrase in a deed, ordinarily signifies only the superficial part of the land." See *Dolan* v. *Dolan*, 70 W. Va. 76, 73 S. E. 90. *Cf. Marquette Cement Mining Co.* v. *Oglesby Coal Co.*, 253 F. 107; and *Shell Oil Co.* v. *Manley Oil Corporation*, 124 F. 2d 714.

In considering the overall implication of the questions presented on this certificate, it is a fair assumption that the exception made by Workman in the deed to Tinney was for the purpose of mining and operating the land for the production of minerals. Now, defendants are seeking to utilize their ownership rights and privileges provided for in that exception for a different purpose, i.e., the storage of gas produced elsewhere. See *Gas Co.* v. *Gas Co.*, 102 W. Va. 374, 135 S. E. 399, wherein it is held that a restriction on the use of property for specific purpose will be enforced. *Cf. Virginian Railway Co.* v. *Avis*, (Va.), 98 S. E. 638.

In the case at bar the term "mineral" is limited by the words of the instrument which separated the minerals from the other estate in the land. We are here dealing with an exception qualifying and limiting the meaning of the term "minerals". We accordingly hold that the plaintiff is the owner of the clay, sand, and stone within and underlying the surface of the land in question, subject to the rights of the individual defendants and their lessees and assigns to produce the minerals excepted by them. Such exception clearly provides that Karney E. Tinney was granted the title to the clay, sand, stone or surface minerals, subject to the right of the individual defendants, their lessees and assigns to use such clay, sand, stone or surface minerals in the conduct of mining and drilling operation in, on and under the land in question.

We are aware of the provision of Chapter 59, Art. 1, Sec. 2, Sub-section (c), Acts of the Legislature, Regular

Session, 1949. Such statute, however, is not pertinent to the questions presented on this certificate.

Accordingly, the ruling of the circuit court of Kanawha County on the demurrers is reversed and the cause is remanded to the common pleas court of that county.

*Ruling reversed; cause remanded.*