**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 19-1065**

JEFFERY J. MOORE; SANDRA J. MOORE,

Plaintiffs - Appellants,

v.

EQUITRANS, L.P., a Pennsylvania Limited Partnership,

Defendant - Appellee.

Appeal from the United States District Court for the Northern District of West Virginia, at Clarksburg.  Frederick P. Stamp, Jr., Senior District Judge.  (1:12-cv-00123-FPS)

Submitted:  March 18, 2020

Decided:  June 26, 2020

Before NIEMEYER, WYNN, and FLOYD, Circuit Judges.

Vacated and remanded by unpublished opinion.  Judge Wynn wrote the opinion, in which Judge Floyd joined.  Judge Niemeyer wrote a separate opinion concurring in the judgment.

Kenneth E. Webb, Jr., William M. Lorensen, BOWLES RICE LLP, Charleston, West Virginia, for Appellants.  David K. Hendrickson, Barbara A. Samples, HENDRICKSON & LONG, PLLC, Charleston, West Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

WYNN, Circuit Judge:

In 2015, a jury found that Defendant-Appellee Equitrans, L.P., had either trespassed on property belonging to Plaintiffs-Appellants Jeffery and Sandra Moore[1] or breached the parties' right-of-way agreement when Equitrans laid sections of a pipeline outside the bounds of the agreement. The jury made no finding as to remedy, but at the time, the Moores hoped to receive injunctive relief to force Equitrans to move the pipeline within the parameters set by the agreement.

However, in 2017, Equitrans obtained a condemnation judgment for the pieces of property containing the disputed pipeline sections. With injunctive relief no longer possible, the Moores sought to file a motion for leave to amend their complaint to pursue an alternative remedy, damages. Instead, the district court dismissed the case with prejudice, stating summarily that amendment would be futile.

We conclude that the district court abused its discretion by not sufficiently explaining its rationale. We vacate and remand for the district court at least to explain more thoroughly why it believed leave to amend would be futile in this case, or for other proceedings consistent with this opinion.

I.

Though the issue before us is narrow, it is preceded by a lengthy, convoluted history, which we review in some detail. The parties' predecessors in interest entered a right-of-way agreement in 1960, which allowed a sixteen-inch pipeline to traverse (underground)

---

[1] The record provides inconsistent spellings of Mr. Moore's first name. We employ the spelling used in the case caption.

roughly 1,600 feet of what is now the Moores' property. In the 1990s, Equitrans replaced several miles of corroded pipeline, including two sections on the Moores' property.

In 2012, the Moores discovered that some of the newer pipeline was constructed outside the bounds of the agreement.[2] They sued Equitrans, alleging three causes of action: 1) breach of the right-of-way agreement; 2) ejectment; and 3) trespass. Their complaint sought four forms of relief: 1) "[a]n award of damages for breach of the right of way agreement;" 2) "[a]n Ejectment Order pursuant to West Virginia Code § 55-4-1, *et seq.*, instructing [Equitrans] to immediately remove the pipeline from the property, together with any other appropriate equitable relief this Court deems proper;" 3) "[a]n award of compensatory damages . . . related to any damage occurring to [the Moores'] property from [Equitrans]'s removal of the pipeline;" and 4) damages for "trespass and unlawful possession" of the property. J.A. 18–19.[3]

The complaint thus raised ejectment both as a cause of action (#2) and as an equitable remedy (#2).[4] Under West Virginia law, that was permitted. *E.g.*, *Heartwood Forestland Fund IV, LP v. Hoosier*, 781 S.E.2d 391, 395 (W. Va. 2015) (noting that W. Va. Code § 55-4-1 "provides a cause of action for the recovery of possession of real estate

---

[2] Below, Equitrans disputed when the Moores learned of the relevant facts and raised a statute of limitations argument. However, the jury found that the Moores filed both their breach of contract and trespass claims within the applicable statutes of limitations. The limitations periods are not at issue in this appeal.

[3] Citations to "J.A. __" refer to the Joint Appendix filed by the parties in this appeal.

[4] Though damages are a possible remedy for the cause of action of ejectment, *see* W. Va. Code § 55-4-22, the complaint made no mention of damages related to the ejectment cause of action (other than seeking compensation for any damage caused by removal of the pipeline).

unlawfully withheld by another" and describing a typical ejectment case as one in which "the plaintiff, asserting a right to the property, alleges that the defendant has entered the premises and is unlawfully withholding possession, or claims ownership, title or interest therein to the plaintiff's detriment"); *Tate v. United Fuel Gas Co.*, 71 S.E.2d 65, 69 (W. Va. 1952) ("A court of equity has jurisdiction to enjoin a continuing trespass.").

But over time, it became clear that the Moores were not pursuing either ejectment as a cause of action or relief in the form of damages for breach of contract or trespass. Rather, they sought only ejectment (and any related damages) as an injunctive remedy for breach of contract or trespass. At the charging conference in 2015, for example, the Moores' counsel claimed that the "case has always been" about how "[t]he breach of the pipeline right-of-way grant or the trespass could get us to [the] remedy of ejectment." District Ct. Dkt. No. 135 at 221. Similarly, when the court asked the Moores' counsel to "address [P]laintiffs' damages" at a 2014 hearing on cross-motions for summary judgment, counsel confirmed that the Moores were seeking ejectment as a remedy for trespass. J.A. 184.

The 2014 hearing is also notable because the parties discussed the possibility that, if the Moores prevailed on their claim that the pipeline was outside the bounds of the right-of-way agreement—which Equitrans disputed—Equitrans would seek condemnation to acquire title to the affected slice of property.[5]

---

[5] The district court later agreed that the "condemnation claim could not have matured until after the pipeline was found to be outside the 1960 right-of-way." J.A. 462.

4

The court denied both parties' motions for summary judgment, and the case proceeded to trial. *Moore v. Equitrans, L.P.*, 49 F. Supp. 3d 456, 477 (N.D.W. Va. 2014). After a two-day jury trial in March 2015, the jury returned a verdict for the Moores, finding that both Equitrans's initial placement of the pipeline in the 1960s and its replacement of sections of the pipeline in the 1990s either violated the terms of the right-of-way agreement or constituted a trespass.

Shortly after trial, Equitrans moved for a stay of execution of the judgment pending its pursuit of condemnation, to which the Moores objected. Both parties also filed proposed judgments. The Moores argued that they were "entitled to the equitable remedy of ejectment," which "is available as a 'proper equitable remedy[] where it is possible that the plaintiff could recover a money judgment, but that he would not be afforded complete relief by such [a] recovery.'" J.A. 298 (quoting *Moore*, 49 F. Supp. 3d at 473); *see Whiteman v. Chesapeake Appalachia, L.L.C.*, 729 F.3d 381, 386 (4th Cir. 2013).[6] Equitrans responded that "[t]here have been no findings by the jury that [the Moores] are entitled to ejectment as a remedy rather than money damages" and that the court "has yet to find ejectment as an equitable remedy rather than money damages." J.A. 301; *see also* J.A. 343 (Equitrans reiterating that "money damages can provide [the Moores] complete relief in this action").

---

[6] The Moores—and the district court—at times treated injunctive relief and damages as mutually exclusive remedies for trespass under West Virginia law. *See* J.A. 352; Opening Br. at 15. Whether they did so under a mistaken understanding of West Virginia law is not now before us; it is undisputed that the requested injunctive relief is no longer available, leaving damages as the only possible remedy.

5

In May 2015, the district court entered a judgment stating that Equitrans had either breached the right-of-way agreement or trespassed with both the initial placement and the replacement of the pipeline. But the court found that the remedy was still to be determined:

> The jury provided no findings that the [Moores] are entitled to ejectment as a remedy rather than a money judgment. This Court, too, has yet to find ejectment as an equitable remedy rather than money judgment. Any conclusions as to the properness of ejectment have yet to be determined, as evidence has not been heard that a money judgment would not afford complete relief in lieu of ejectment.

J.A. 352–53. The court also granted Equitrans's motion to stay the judgment pending the outcome of the condemnation action.

Equitrans filed their condemnation complaint before the same district judge in June 2015. *See* Complaint, *Equitrans, L.P. v. 0.56 Acres More or Less of Permanent Easement Located in Marion Cty.*, No. 1:15-cv-00106 (N.D.W. Va. June 18, 2015). In November, the court denied the Moores' motion to dismiss the complaint and granted Equitrans's motion to dismiss the Moores' counterclaims. *Equitrans, L.P. v. 0.56 Acres More or Less of Permanent Easement Located in Marion Cty.*, 145 F. Supp. 3d 622, 626 (N.D.W. Va. 2015).

In response, in early 2016, the Moores moved to lift the stay in this case. They argued that the court's November 2015 order in the condemnation action "effectively denied" their "requested relief for ejectment," so they should be allowed "to recover monetary damages" instead to remedy Equitrans's decades of trespass. J.A. 374. For its part, Equitrans argued that the stay should remain in place because the Moores "must not be permitted to proceed to a jury on a claim for monetary damage that they have admitted

6

and represented to the Court does not exist." J.A. 477. In support, Equitrans provided a 2013 deposition of Mr. Moore in which he appeared to concede that he had not been monetarily damaged by the trespass. The court concluded that judicial economy favored continuing the stay because "compensation for the right-of-way in the condemnation action may fully compensate the Moores in this action," but it deferred ruling on Equitrans's argument that the Moores had abandoned a claim for damages. J.A. 534–35.

The condemnation action proceeded to a jury trial in January 2017. After a one-day trial, the jury awarded $5,000 to the Moores as the fair market value for the 0.56 acres condemned by Equitrans. Including prejudgment interest, the total award was $5,556.16. The Moores appealed.

Around the same time, the Moores moved to amend or correct the district court's May 2015 judgment in this action. They requested permission "to eject the pipeline or . . . to seek monetary damages for Equitrans' trespass." J.A. 536. Equitrans argued that the motion was premature while the condemnation action was on appeal. They also renewed their argument that the Moores had voluntarily elected to pursue the remedy of ejectment rather than damages. The Moores responded that the jury's verdict in the condemnation action did not provide them a remedy for the earlier trespass.

In April 2017, the court denied without prejudice the Moores' motion to amend the judgment, opting instead to continue the stay. The court found that "it would be beneficial to maintain the stay of this civil action pending the appeal in the condemnation action because the outcome of that appeal will determine the available remedies in this civil action." J.A. 680. If the condemnation judgment was affirmed, ejectment would not be

7

available because Equitrans would have title to the disputed property. And while "the Moores had withdrawn claims for monetary damages and sought only ejectment[,] . . . . the judgment in the condemnation action is for the amount of just compensation for the taking of the right of way and does not serve as a remedy for Equitrans' prior trespass." J.A. 678, 680–81. Nevertheless, because "whether the Moores may now elect damages as their remedy presents several legal questions that will be best determined after the appeal in the condemnation action," the court deferred resolving that issue. J.A. 681.

This Court affirmed the judgment in the condemnation action in March 2018. *Equitrans, L.P. v. Moore*, 725 F. App'x 221, 222 (4th Cir. 2018) (per curiam). With that proceeding fully resolved, the district court ordered the parties to file a status report in this case, "which remain[ed] stayed." J.A. 683.

In separate status reports, the parties agreed that the stay should be lifted. But while the Moores proposed that the court enter a briefing schedule on the issue of damages—and "anticipate[d]" that within three weeks of the court lifting the stay, they would "file a Motion for Leave to Amend and an Amended Complaint" to "thoroughly detail the facts and authority surrounding [their] request" for damages, J.A. 689—Equitrans argued that the case should instead be dismissed. According to Equitrans, "[t]he *sole* remedy sought by [the Moores] for the breach of contract or trespass . . . was ejectment from [their] property of those portions of the pipeline found to be outside the right-of-way," a remedy which was no longer available because in light of the condemnation action, "Equitrans has title to the subject acreage." J.A. 693. And because the Moores had withdrawn their claims for damages, "there [wa]s no basis upon which to award monetary damages." *Id.* Equitrans

8

concluded that the Moores "must not now be permitted to reopen the evidence or proceed to a jury on claims for undisclosed monetary damage for breach of contract or trespass that they *previously represented and admitted they do not have*." *Id.*

In December 2018, the district court lifted the stay and dismissed the action with prejudice, stating that it had reviewed the status reports and agreed with Equitrans. The court concluded that "[the Moores'] request to file a motion for leave to amend and an amended complaint is denied as futile as [they] have no available remedy for damages and no other rights remaining." J.A. 698. The Moores timely appealed.

## II.

The sole issue before us on appeal is whether the district court properly denied the Moores' request for leave to amend their complaint.[7] Under Rule 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave," but "[t]he court should freely give leave when justice so requires."[8] Fed. R. Civ. P. 15(a)(2). Generally, district courts should deny leave to amend "only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving

---

[7] The Moores noticed appeal from the May 2015 judgment after trial, the April 2017 order denying their Rule 59 motion, and the December 2018 order dismissing the action. But their briefing clarifies that they appeal only the 2018 order.

[8] Although Rule 15(a) describes itself as applying to "Amendments Before Trial," "there is no strong textual basis for th[e] interpretation" that Rule 15(a) can *only* be used before trial. 6 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1488 (3d ed. 2010 & Supp. 2020). This Court has held that "a district court may not deny . . . a motion [to amend] simply because it has entered judgment against the plaintiff—be it a judgment of dismissal, a summary judgment, or a judgment after a trial on the merits." *Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006) (citing with approval section 1488 of Wright and Miller).

9

party, or the amendment would be futile." *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999) (emphasis omitted) (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986)).

However, the court's discretion increases at later stages of litigation. "[A]fter the deadlines provided by a scheduling order [under Rule 16(b)] have passed, the good cause standard must be satisfied to justify leave to amend the pleadings." *Attkisson v. Holder*, 925 F.3d 606, 626 (4th Cir. 2019) (quoting *Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008)), *as amended* (June 10, 2019). The good-cause hurdle of Rule 16(b)(4), which states that "[a] schedule may be modified only for good cause and with the judge's consent," dampens Rule 15(a)(2)'s mandate to "freely give leave [to amend] when justice so requires." *See Nourison Rug*, 535 F.3d at 298.

Here, the scheduling order required that motions to amend pleadings be filed by September 11, 2013, and thus Rule 16(b)'s good-cause standard applied to the Moores' June 2018 request.

Although the district court's discretion is substantial—especially where Rule 16(b) applies in addition to Rule 15(a)(2)—it is not limitless; district courts must provide reasons for denying leave to amend. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Even so, this Court may affirm where a district court failed to articulate its reasons if those reasons are apparent from the record. *Matrix Capital Mgmt. Fund, LP v. BearingPoint, Inc.*, 576 F.3d 172, 194 (4th Cir. 2009). "Furthermore, 'when a complaint is incurable through amendment, dismissal is properly rendered with prejudice and without leave to amend.'" *United States ex rel. Carson v. Manor Care, Inc.*, 851 F.3d 293, 305 n.6 (4th Cir. 2017) (quoting *McLean*

10

*v. United States*, 566 F.3d 391, 400 (4th Cir. 2009), *abrogated on other grounds by Lomax v. Ortiz-Marquez*, 140 S. Ct. 1721 (2020)).

But here, the district court's rationale is far from clear, and based on the present record, we cannot determine whether amendment is indeed futile.

When the district court dismissed the case, it stated only: "This Court has reviewed the status reports submitted by the parties and agrees with [Equitrans]'s position. [The Moores'] request to file a motion for leave to amend and an amended complaint is denied as futile as [they] have no available remedy for damages and no other rights remaining." J.A. 698. "Equitrans's position," in turn, was that 1) the Moores had pursued only the remedy of ejectment, which was no longer available to them; and 2) there was "no basis upon which to award monetary damages" because the Moores had withdrawn any previous claim for money damages and had made it clear that they "d[id] not have monetary damages." J.A. 693 (emphasis omitted).

Given the unique posture of this case, the district court's explanation was insufficient. It is not clear, for example, whether (or to what degree) the district court based its decision on the notion that the Moores had withdrawn their claim for money damages. After all, the court initially declined to accept Equitrans's argument that the Moores had abandoned their claim to damages, but later found, without explanation, that they had. *See* J.A. 535, 678. Moreover, the district court repeatedly suggested that the Moores would have an opportunity to pursue money damages. *E.g.*, J.A. 353, 363, 367, 534–35, 680–81. These contradictory messages muddy any attempt to discern the court's rationale.

11

It is also unclear what role, if any, the condemnation proceeds played in the district court's thinking. At one point, the court found that "the judgment in the condemnation action is for the amount of just compensation for the taking of the right of way and does not serve as a remedy for Equitrans' prior trespass." J.A. 680–81. Yet it stated elsewhere that "compensation for the right-of-way in the condemnation action may fully compensate the Moores in this action." J.A. 534–35. And in its order dismissing the case, the court noted that just compensation for the condemnation had "been fully and finally adjudicated in the related condemnation action." J.A. 698. These statements lead us to wonder whether the court in fact considered the condemnation proceeds in its decision.

And the district court had also previously recognized potentially relevant unresolved legal issues, namely, questions related to whether federal or West Virginia procedural law applied and questions of judicial estoppel. The court delayed resolution of those questions until "after the appeal in the condemnation action is resolved and the parties have had an opportunity to completely present arguments on these matters." J.A. 681. But the parties never presented argument on those issues, and the court never evaluated them, at least not by written order.

To be sure, the record suggests some good reasons why the district court may have opted to deny leave to amend. As discussed, it does appear that the Moores sought only ejectment as a remedy, and not damages—but that was before the condemnation proceeding concluded, which removed ejectment as an option. Moreover, the Moores alleged damages in their initial complaint, making it unclear exactly what amendment they would have proposed. Nevertheless, if they did indeed withdraw their claim for damages,

12

they might have sought to amend their complaint with specific, renewed claims for damages. Finally, Equitrans submitted deposition testimony tending to show that the Moores did not have any trespass damages to allege. Yet the district court did not allude to that record evidence, and if the dismissal of the case rested entirely on that deposition, the Moores should have had the opportunity to argue why it was not dispositive or why they should be allowed to amend their complaint to pursue some other form of damages.

In other cases, we have held that the district court's rationale for denying leave to amend was clear enough that remand was unnecessary. For example, we have held that a district court did not abuse its discretion in dismissing an action where the appellants had already filed four complaints and had not moved to amend the operative complaint. *David v. Alphin*, 704 F.3d 327, 343 (4th Cir. 2013). But here, we cannot discern the court's reasoning. Nor can we affirm on the basis that there is no possible amended complaint that would allow the Moores to pursue damages. Rather, we find the best course to be for the district court to explain in the first instance whether to permit an amendment and the reason for its decision.

## III.

The district court had substantial discretion to deny leave to amend, especially at this late stage of litigation. But it must make its reasoning clear. Here, the consequences of dismissal were particularly sharp: the court dismissed an action with prejudice where a jury had concluded an injury existed, but where the injury had not yet been remedied. Of course, perhaps there was no remedy to be had. We do not comment on the merits of any proposed

13

amendment, or whether the court should permit it at this stage. We hold only that the district court must, at minimum, makes its rationale more transparent.

*VACATED AND REMANDED*

NIEMEYER, Circuit Judge, concurring in the judgment:

While I would end up with generally the same result ordered by the majority, I am troubled that its opinion leaves, indeed perpetuates, the profound procedural confusion created by counsel for the parties in the proceedings before the district court, demonstrating a lack of understanding of law and equity, of ejectment and trespass, and of appropriate remedies. Their lack of understanding and, indeed, their changing positions taken during the various conferences before the district court and in the various pleadings filed, put the court in a most difficult procedural quagmire. The majority notes, and I agree, that "we cannot discern the court's reasoning." But rather than unravel the confusion, the majority lets it stand to solidify, providing little help to the parties and the district court. Indeed, it goes so far as to perpetuate the confusion by reading the Supreme Court of Appeals of West Virginia's decision in *Tate v. United Fuel Gas Co.*, 71 S.E.2d 65 (W. Va. 1952), to support the district court, suggesting that ejectment is not only a statutory cause of action but also a form of equitable remedy. *Tate*, however, supports no such ambiguity, as I explain below.

This case began when Jeffery and Sandra Moore filed a complaint against Equitrans, L.P., alleging that Equitrans' pipeline had been encroaching on their property in Fairview, West Virginia, without permission. The Moores alleged that years earlier, in 1960, their predecessors in interest had granted Equitrans a right-of-way for the pipeline but that, as the Moores later learned, Equitrans had constructed the pipeline outside the right-of-way. They asserted claims for breach of the right-of-way contract, trespass, and ejectment. And for relief, they demanded removal of the pipeline from their property, as well as damages

15

(1) for "breach of the right of way agreement"; (2) for the ongoing trespass; (3) for Equitrans' "unlawful possession of [their] property"; and (4) for any harm caused by removing the pipeline.

Following a jury verdict in the Moores' favor; a stay order to allow Equitrans to pursue condemnation of the land on which it was encroaching in a separate proceeding; and numerous orders and hearings concerning the Moores' entitlement to remedies, the district court ultimately dismissed the Moores' action without addressing any of their damages claims and without permitting them to amend their complaint to make clear their damages claims. By the end of the process, the court found itself in a procedural soup that resulted from counsel's positions and an erroneous understanding of ejectment actions and the relief they can afford.

At bottom, because the Moores were entitled through an ejectment cause of action to have an opportunity to prove damages resulting from Equitrans' encroachment during a period of many years — as distinct from the condemnation award entered in the separate proceeding — I would also vacate the dismissal order and remand for further proceedings as indicated below.

I

The relevant facts are procedural. Following a two-day trial, a jury returned a verdict in favor of the Moores on all issues submitted to it. It found that Equitrans' placement of its pipeline "violated the terms of the 1960 right-of-way agreement or constituted a trespass" and that the Moores commenced their action for a breach of contract

16

and trespass within the relevant limitations periods. Thereafter, the district court purported to enter a "judgment," in which it reported the jury's verdict but left open the remedy. It stated:

> The plaintiffs' complaint requested *the equitable remedy of ejectment* pursuant to West Virginia Code § 55-4-1, *et seq.* Ejectment is an action for the protection of one with good legal title to the land who is entitled to immediate possession. *Ejectment is available as a proper equitable remedy,* where it is possible that the plaintiff could recover a money judgment, but that he would not be afforded complete relief by such recovery.
>
> *    *    *
>
> The jury provided no findings that the plaintiffs are entitled to ejectment as a remedy rather than a money judgment. This Court, too, has yet to find ejectment as an equitable remedy rather than money judgment. Any conclusions as to the properness of ejectment have yet to be determined, as evidence has not yet been heard that a money judgment would not afford complete relief in lieu of ejectment.

(Emphasis added) (cleaned up).

Thus, acting under the assumption — which was shared by both parties — that ejectment was an equitable remedy available only if complete relief could not be afforded by a recovery of money damages, the court pursued a course that ultimately led to dismissal of the Moores' action without any opportunity to prove damages. The court first granted Equitrans' motion to stay the "judgment" until Equitrans could prosecute and complete a condemnation proceeding under the Natural Gas Act, 15 U.S.C. § 717 *et seq.*, for the land on which it was encroaching. In doing so, the court explained:

> Given that the remaining issue in this case involves what remedy the plaintiffs are entitled to based on a prior jury verdict in their favor, this Court feels it would be beneficial to stay this action until such time as the condemnation action is resolved or until further order of this Court. This will

17

ensure that the issues in this case are efficiently dealt with as a judgment of condemnation could make a judgment in this case unnecessary.

When the Moores filed a motion to lift the stay, noting that "despite the jury finding in the Moores' favor, the Moores have not yet received *any* relief for Equitrans' unlawful conduct," the court denied the motion, stating that it had not made "a determination about what remedy may be appropriate in this civil action." It explained:

> [J]udicial economy will be best served by continuing the stay until the condemnation action is fully resolved, as compensation for the right-of-way in the condemnation action may fully compensate the Moores in this action.

After the property was awarded to Equitrans in the condemnation proceeding, the Moores submitted a status report on June 19, 2018 (over 3 years after the jury verdict), requesting that the court enter a briefing schedule "on the Moores' prior request to seek monetary damages in light of the significant changes in circumstances [i.e. Equitrans' success in the condemnation proceeding]." The Moores also stated that they intended to file a motion for leave to amend the complaint to detail their claims for damages. By contrast, in its status report, Equitrans stated its position that the stay could now be lifted not for further proceedings but so that the action could be dismissed. Equitrans claimed that "the *sole* remedy sought by Plaintiffs for the breach of contract or trespass found by the jury in this case was ejectment from Plaintiffs' property of those portions of the pipeline found to be outside the right-of-way designated by the 1960 [right-of-way agreement]," and it then argued that "[e]jectment is not an available remedy to Plaintiffs as Equitrans has title to the subject acreage [as a result of the condemnation proceeding]." Equitrans did not address the Moores' continuing demand for damages because, after the court had

18

indicated that an election of remedies was required, the Moores had elected ejectment, which Equitrans contended precluded any claim for damages.

In response to the status reports of both parties, the court stated that it agreed with Equitrans and therefore issued an order lifting the stay and a separate order dismissing the case. In its dismissal order, the court also stated it was denying the Moores' request to file a motion for leave to amend the complaint because doing so would be "futile as plaintiffs have no available remedy for damages and no other rights remaining."

From the district court's order dated December 13, 2018, dismissing the complaint, the Moores filed this appeal. They frame their appeal as a challenge to the district court's refusal to permit them to amend their complaint.

II

In general, we review a district court's denial of a motion for leave to amend a complaint for abuse of discretion. *See Save Our Sound OBX, Inc. v. N.C. Dep't of Transp.*, 914 F.3d 213, 227 (4th Cir. 2019). But where, as here, a district court refuses to permit amendment on the basis that such amendment would be futile, we review the district court's legal conclusions de novo. *See id.* Under either standard of review, we endeavor to ensure that the district court's determination was not infected by an error of law. *See Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 572 U.S. 559, 563 (2014) (explaining that questions of law are traditionally reviewed de novo); *Koon v. United States*, 518 U.S. 81, 100 (1996) (explaining that "[a] district court by definition abuses its discretion when it makes an error of law").

Two legal errors shaped the procedural course that led to the inappropriate dismissal of this case. First, the district court and the parties acted on the assumption that ejectment was an equitable remedy governed by equitable principles, including a requirement to elect remedies. Based on this misunderstanding, the Moores indicated that their preference in terms of a remedy was the removal of the pipeline from their property — which the court understood as an election of ejectment without a right to receive damages. Second — and in some tension with the first error — the court and Equitrans assumed that the $5,000 awarded to the Moores in the condemnation proceeding as just compensation for the property precluded any further award for damages arising out of Equitrans' illegal encroachment that had occurred over the years.

Because the court and counsel for both parties, at the various hearings and in the numerous written submissions, made inconsistent and erroneous statements on these points, blame for the errors cannot fairly be placed on either the court or any one of the parties. The fact remains, however, that ejectment is a cause of action *at law*, which entitles the property owner to obtain *possession of his property and damages*, as determined by a jury. The right to possession and damages are therefore not inconsistent, and the West Virginia cause of action for ejectment thus does not require an election of remedies.

At common law, ejectment was one of the principal ten writs authorized at law, having evolved from the more generalized "real writs," which authorized various actions with respect to real property. Sir William Blackstone explained that the writ of ejectment authorized a person with an interest in real property "to call the defendant to answer for entering on the lands so demised to the plaintiff for a term that is not yet expired and

20

ejecting him. And by this writ the plaintiff shall recover back his term, or the remainder of it, *with damages*." William Blackstone, *Commentaries on the Laws of England* § 260, at 1771 (William Carey Jones ed. 1976) (emphasis added); *see also* Arthur George Sedgwick & Frederick Scott Wait, *The History of the Action of Ejectment in England and the United States* § 27, in *Select Essays in Anglo-American Legal History* 611, 624 (The Law Book Exchange Ltd. 1992) (noting that the person with an interest in real property "is entitled to his action of ejectment against the tenant, or this casual ejector, whichever it was that ousted him, to recover back his term *and damages*" (cleaned up and emphasis added)).

Significantly, West Virginia has codified the common law of ejectment actions, building on 19th-century Virginia law. *See* W. Va. Code Ann. § 55-4-1 *et seq.* The first section of the ejectment statute, entitled "When ejectment a proper remedy," provides:

> The action of ejectment *is retained and may be brought as heretofore*, subject to the provisions hereinafter contained. It may also be brought in the same cases in which a *writ of right* might have been brought prior to the first day of July, in the year eighteen hundred and fifty, in the state of Virginia, and by any person claiming real estate in fee or for life, or for years, either as heir, devisee, purchaser, or otherwise.

*Id.* § 55-4-1 (emphasis added). Though perhaps confusingly referred to as a "remedy" in this section's subtitle, the remainder of the statute then specifies the entire procedure for pursuing the *cause of action* of ejectment. It provides that a complaint for ejectment must allege that the defendant "withh[eld] from the plaintiff the possession [of the plaintiff's property], or exercise[d] acts of ownership thereon or claim[ed] title thereto or some interest therein, to his damage, such sum as the plaintiff shall state." *Id.* § 55-4-6. The complaint must describe the relevant property "with convenient certainty, so that from such

21

description possession thereof may be delivered." *Id.* The statute authorizes that, as in any case at law, the issues in the ejectment action may be submitted to a jury, *see id.* § 55-4-17, and that the jury must return a verdict, which may assess damages, "unless the court otherwise order," *id.* at § 55-4-21; *see also id.* § 55-4-22. Specifically, the court may "impanel[]" the jury to assess damages. *Id.* § 55-4-22. Finally, the Act authorizes the defendant in an ejectment action to interpose equitable defenses. *See id.* §§ 55-4-11 to -13.

Remarkably, in discussing the ejectment claim, neither party in this case cited West Virginia's ejectment statute to the district court or on appeal.

The district court thus erred in concluding that ejectment was an equitable remedy and that it was available only when the plaintiff "would not be afforded complete relief by such recovery [of monetary damages]." We are unable to discern any indication in West Virginia law that the term "ejectment," in addition to referring to the statutory cause of action, may also refer to some sort of equitable remedy. Indeed, the case relied upon by the district court, and also by the majority, for this proposition — *Tate v. United Fuel Gas Co.*, 71 S.E.2d 65 (W. Va. 1952) — suggests no such thing. Instead, in *Tate*, the Supreme Court of Appeals of West Virginia explained that, historically, "[a] court of equity ha[d] jurisdiction to *enjoin* a continuing trespass," but it was only in a court of law that a plaintiff could pursue an "action of *ejectment*." 71 S.E.2d at 70 (emphasis added); *see also Putnam Co. v. Fisher*, 36 S.E.2d 681, 689 (W. Va. 1945) (referring to ejectment as distinct from equitable remedies); *United Fuel Gas Co. v. Townsend*, 139 S.E. 856, 857 (W. Va. 1927) (same). In this case, the Moores never requested that the district court enjoin Equitrans'

22

trespass as a matter of equity. Indeed, the words "enjoin" and "injunction" are absent from those of the Moores' filings before the district court presented in the record before us. Instead, the complaint explicitly sought "An Ejectment Order pursuant to West Virginia Code § 55-4-1, *et. seq.*" Thereafter, the Moores repeatedly requested that the district court grant them *ejectment*. It was error for the district court to infer or misunderstand from these requests that the Moores sought some sort of equitable remedy for trespass.

Moreover, because the Moores were pursuing an action at law, it was error to require them to make an election of remedies — ejectment or damages, but not both. It was also error to assume that the compensation that the Moores received in the condemnation proceeding for the value of their property precluded damages for Equitrans' unlawful possession of their property during the years before the taking. And finally, it was error for the court to have dismissed the action on the ground that, after conclusion of the condemnation proceedings, the Moores "ha[d] no available remedy for damages and no other rights remaining."

At bottom, it is clear that the Moores pleaded in their complaint a claim for both possession of their property *and* damages, and therefore their complaint need not have been amended. The insistence that the Moores make an election of either one but not both of the remedies resulted from a flawed understanding of the nature of ejectment actions.

Because of these legal errors, I would vacate the district court's December 13, 2018 judgment of dismissal and remand for further proceedings to allow the Moores to attempt to prove the damages they sustained by Equitrans' unlawful possession of their property prior to the transfer of title to Equitrans.

23